[807 NE2d 268, 775 NYS2d 219]

ALLSTATE INSURANCE COMPANY, as Subrogee of AMY M. WALKER, Appellant, v DANIEL J. STEIN, Respondent. (And Two Other Actions.)

Argued January 13, 2004; decided February 19, 2004

## POINTS OF COUNSEL

*Chelus, Herdzik, Speyer, Monte & Pajak, P.C.,* Buffalo (*Gregory V. Pajak* and *Kevin E. Loftus* of counsel), for appellant. The Appellate Division, Fourth Department, incorrectly held that the statute of limitations for Allstate's additional personal injury protection subrogation action had expired. (*Matter of Motor Veh. Acc. Indem. Corp. v Aetna Cas. & Sur. Co.,* 89 NY2d 214; *Aetna Life & Cas. Co. v Nelson,* 67 NY2d 169; *Cardinell v Allstate Ins. Co.,* 258 AD2d 853; *Hartford Acc. & Indem. Co. v CNA Ins. Cos.,* 99 AD2d 310; *Scavone v Kings Craft Corp.,* 55 AD2d 807.)

*Bouvier, O'Connor, LLP,* Buffalo (*Norman E.S. Greene* of counsel), for respondent. I. Institution by Allstate of the subrogation action against Daniel J. Stein is barred by the statute of limitations as untimely, given the background facts and circumstances of this action. (*Matter of Motor Veh. Acc. Indem. Corp. v Aetna Cas. & Sur. Co.,* 89 NY2d 214; *Matter of Allstate Ins. Co. [Clarendon Natl. Ins. Co.],* 259 AD2d 971; *Matter of Prudential Prop. & Cas. Ins. Co. [Bacchus],* 226 AD2d 384; *Nationwide Mut. Ins. Co. v Schwartz,* 172 Misc 2d 503; *Aetna Life & Cas. Co. v Nelson,* 67 NY2d 169; *Country Wide Ins. Co. v Osathanugrah,* 94 AD2d 513; *Liberty Mut. Ins. Co. v Clark,* 296 AD2d 442; *Seven Sixty Travel v American Motorists Ins. Co.,* 98 Misc 2d 509; *State Farm Mut. Auto Ins. Co. v Regional Tr. Serv.,* 79 AD2d 858; *Blacharsh v Hartford Ins. Group,* 104 AD2d 839.) II. Since Allstate's insureds provided an unrestricted general release to the defendant Stein which was acquiesced in by Allstate, any alleged subrogation right by Allstate has been waived and is otherwise barred by execution of the release. (*Weinberg v Transamerica Ins. Co.,* 62 NY2d 379; *Matter of Allstate Ins. Co. [Liberati],* 280 AD2d 922; *New York Cent. Mut. Fire Ins. Co. v Danaher,* 290 AD2d 783.)

## OPINION OF THE COURT

R.S. SMITH, J.

This appeal concerns the timeliness of an action by an insurance company as subrogee of an accident victim to whom the insurance company has paid additional personal injury protection (APIP) benefits. The question presented is whether the statute of limitations runs from the date of the accident or the date

when the first APIP benefits were paid. We hold that the statute runs from the date of the accident, and that the insurer's action is therefore time-barred.

### Factual Background

On May 24, 1995, a vehicle operated by Daniel Stein struck a vehicle being operated by Amy Walker and injured her. New York's No-Fault Law required that Walker have insurance coverage providing "[f]irst party benefits" consisting of reimbursement, to the extent specified by statute, for "[b]asic economic loss" (health expenses, loss of earnings, and other reasonable and necessary expenses) (Insurance Law § 5102 [a], [b]; § 5103 [a]). As the term "no-fault" implies, these first party benefits were payable to Walker regardless of who was at fault, and neither Walker nor her insurer could recover them from Stein (Insurance Law § 5104 [a]).

As authorized by New York Insurance Department Regulations (11 NYCRR) § 65-1.3 (though not required by statute), Walker had also purchased an APIP endorsement from Allstate Insurance Company covering her for "extended economic loss"—i.e., economic loss exceeding the time and dollar limits of the "basic economic loss" that is subject to mandatory no-fault coverage. Recovery of "extended economic loss" from third parties is not restricted by the no-fault statute.

On August 2, 1996, Walker began an action against Stein in Supreme Court, alleging that she had sustained a serious injury, which would permit her to recover noneconomic loss without violating the no-fault statute (Insurance Law § 5104 [a]), and also seeking to recover economic loss other than her basic economic loss. Thus, Walker sought to recover from Stein the same "extended economic loss" that was covered by the APIP endorsement in her Allstate policy.

By June 29, 1998, Walker's basic no-fault coverage had evidently been exhausted, and Allstate made its first payment of APIP benefits to Walker. Allstate alleges that by May of 2001 it had paid more than $42,000 to Walker in APIP benefits. By making those payments, Allstate became subrogated to a portion of Walker's claim against Stein.

On February 20, 2001, counsel for the parties in Walker's action against Stein appeared, along with counsel for Allstate, at a conference before Supreme Court. Walker's counsel stated that Walker and Stein had agreed on a $300,000 settlement of the action. Counsel for Stein stated that the release Stein expected

to get from Walker "cuts off any rights that Allstate would have against either Mr. Stein or [Stein's insurance carrier]" and requested a "clarification . . . to that effect" from Allstate's counsel. Allstate's counsel, without commenting directly on the request for clarification, stated that Walker "has been made aware of the possible subrogation claim in the amount of 43 thousand dollars . . . and that she understands that in entering into this release." Counsel for Walker added his own "clarification" stating that Walker is "giving a general release to the defendant [and] . . . is reserving whatever rights or obligations or defenses she or her husband may have to any party to this proceeding, including Allstate Insurance Company, and I'm not conceding on the record that there's a right of subrogation or anything else."

Thus, it seems that the three parties represented at the conference had three different, and inconsistent, understandings of the settlement: Stein understood that he was getting a complete release, good against both Walker and Allstate; Allstate understood that it was preserving what it called a "subrogation claim," though its counsel's statement may be read as implying a claim against Walker for part of the $300,000, rather than against Stein for some additional amount; and Walker apparently understood that she would keep the whole $300,000, and did not recognize that Allstate was entitled to anything. Walker's counsel added that "[W]e're all going to let the law . . . determine what rights and obligations, if any, anyone has," and the court echoed this comment: "[I]t's clear on the record that all three parties are saying that they intend to fully enforce their rights to the full extent of the law and defenses that they might have."

On February 23, 2001, Walker's counsel delivered to Stein's counsel an unqualified general release in Stein's favor, executed by Walker and her husband, but not by Allstate. Stein resisted paying Walker the full $300,000 in return for this release. He paid Walker $200,000, and sought to require Walker and Allstate to resolve the allocation of the remaining $100,000 between themselves: first, Stein offered a $100,000 draft payable to both Walker and Allstate; he later began an interpleader action. Walker rejected the $100,000 draft and caused a judgment in the amount of $100,000 to be entered against Stein. Stein moved to vacate the judgment.

Despite its counsel's comments at the settlement hearing, Allstate apparently made no effort to recover from Walker any por-

tion of the $300,000 settlement. However, on May 4, 2001 Allstate, "as Subrogee of Amy M. Walker," began its own action against Stein. This action, the third to be brought (after Walker's original lawsuit and Stein's interpleader action), is the one whose timeliness is now in issue. Allstate's complaint alleged that Walker had been injured through Stein's negligence; that as a result of those injuries, she had suffered losses for which Allstate paid her compensation in the form of APIP benefits; that Allstate had become Walker's subrogee under the terms of its policy and the applicable insurance regulations; and that Allstate was therefore entitled to recover from Stein the APIP benefits it had paid. Stein moved to dismiss Allstate's action based on, among other grounds, the statute of limitations.

Supreme Court resolved the three-cornered dispute by allowing Walker's judgment against Stein to stand, dismissing Stein's interpleader complaint and denying Stein's motion to dismiss Allstate's action. Stein appealed to the Appellate Division, which, by a three-two vote, reversed the denial of Stein's motion to dismiss, holding that Allstate's claim was barred by the statute of limitations. Allstate appeals as of right (CPLR 5601 [a]).

## Discussion

Stein contends that Allstate, as Walker's subrogee, stands in Walker's shoes and was therefore required to bring suit by May 24, 1998, three years after the date of Walker's accident, and almost three years before Allstate in fact sued.[1] Allstate contends that, by making APIP payments to Walker, it acquired a new cause of action against Stein on June 29, 1998 and was permitted to sue until three years after that date.[2]

In deciding the issue in Stein's favor, the Appellate Division majority analyzed the question, we think correctly, as follows:

> "Allstate's subrogation action is governed by the same statute of limitations applicable to action No. 1, the personal injury action commenced by the Walkers against Stein. That is consistent with the principles that a subrogation claim is derivative of

---

**1.** CPLR 214 (5) imposes a three-year statute of limitations for most personal injury actions.

**2.** Allstate relies on CPLR 214 (2), providing a three-year limitation period for "an action to recover upon a liability, penalty or forfeiture created or imposed by statute."

the underlying claim and that the subrogee possesses only such rights as the subrogor possessed, with no enlargement or diminution. It is likewise consistent with the principle that a defendant in a subrogation action has against the subrogee all defenses that he would have against the subrogor, including the same statute of limitations defense that could have been asserted against the subrogor" (305 AD2d 972, 974 [2003] [citations omitted]).

Allstate does not dispute that the above quotation correctly states the law applicable to subrogation generally. It contends, however, that the right asserted by Allstate in this case is not an ordinary subrogation right, but a creature of statute (as implemented by Insurance Department regulation), and that this case is therefore analogous to *Matter of Motor Veh. Acc. Indem. Corp. v Aetna Cas. & Sur. Co.* (89 NY2d 214 [1996] [*MVAIC*]) and *Aetna Life & Cas. Co. v Nelson* (67 NY2d 169 [1986]).

*MVAIC* concerned the right of the Motor Vehicle Accident Indemnification Corporation (MVAIC) to recover from the insurer of a vehicle no-fault benefits that MVAIC had paid after the vehicle's insurer denied coverage. In that case, the defendant insurer claimed that MVAIC's right was "in the nature of subrogation" and that MVAIC thus had no greater rights than its insured and was subject to the same statute of limitations (*MVAIC*, 89 NY2d at 220). This Court held otherwise, stating that MVAIC's entitlement to reimbursement was "created or imposed by statute, but for which [it] would not exist" (*id.* at 221).

The *MVAIC* court relied on *Aetna Life & Cas. Co. v Nelson*, which concerned the attempt of a no-fault insurer to enforce a statutory lien pursuant to Insurance Law § 673 (2) (now § 5104 [b]). Noting that the statute of limitations contained in CPLR 214 (2) "only governs liabilities which would not exist but for a statute" (67 NY2d at 174), this Court in *Aetna* held that the liability there at issue was in that category. We stated that the statute creating that liability

"does not codify common-law principles; it creates new and independent statutory rights and obligations in order to provide a more efficient means for adjusting financial responsibilities arising out of automobile accidents" (*id.* at 175 [citation omitted]).

This case is different from *MVAIC* and *Aetna* because it involves a traditional equitable subrogation, not a liability created by statute. Indeed, no statute even refers to APIP benefits, much less a subrogation claim by an APIP carrier against a tortfeasor. Allstate relies not on a statute but on an Insurance Department regulation, 11 NYCRR 65-1.3, which sets forth a form of APIP endorsement which is "approved and promulgated" by the Department of Insurance (§ 65-1.3 [a]). The APIP endorsement approved by the Department includes a subrogation clause, as follows:

> "In the event of any payment for extended economic loss, the Company is subrogated to the extent of such payments to the rights of the person to whom, or for whose benefit, such payments were made. Such person must execute and deliver instruments and papers and do whatever else is necessary to secure such rights. Such person shall do nothing to prejudice such rights."

The regulation, however, does not create a new right which did not exist at common law, but merely prescribes the form of a clause that declares Allstate's pre-existing right. On the facts of this case, Allstate would have a right of subrogation against Stein if there were no applicable regulation, and indeed even if there were no explicit subrogation clause in the insurance policy. Subrogation is a venerable equitable doctrine, not a recent invention of the Insurance Department. Almost 80 years ago, our Court explained the doctrine of subrogation as follows:

> "It is so well settled as not to require discussion that an insurer who pays claims against the insured for damages caused by the default or wrongdoing of a third party is entitled to be subrogated to the rights which the insured would have had against such third party for its default or wrongdoing. This right of subrogation is based upon principles of equity and natural justice. We recognize at once the fairness of the proposition that an insurer who has been compelled by his contract to pay to or in behalf of the insured claims for damages ought to be reimbursed by the party whose fault has caused such damages . . ." (*Ocean Acc. & Guar. Corp. v Hooker Electrochemical Co.*, 240 NY 37, 47 [1925]; see also *Aetna Cas. & Sur. Co. v Jackowe*, 96 AD2d

37, 44 [2d Dept 1983] [quoting, in the context of an APIP carrier's subrogation rights, the statement in *Kozlowski v Briggs Leasing Corp.*, 96 Misc 2d 337, 342 (Sup Ct, Kings County 1978): "subrogation is equitable in nature, not dependent on contract"]).

Allstate protests that, if the statute of limitations on its subrogation claim runs from the date of the accident, the claim may be time-barred before the right of subrogation exists, so that the subrogee would never have an opportunity to bring suit on the claim. But this sort of risk is inherent in subrogation; the subrogee acquires only the rights that the subrogor had, and so any subrogee may find its claim defeated by a defense based on the subrogor's action or inaction. In such a case, the subrogee's remedy is against the subrogor, for conduct that has prejudiced the subrogee's right. The APIP endorsement quoted above specifically provides that the subrogor shall "do nothing to prejudice" the insurer's rights of subrogation. This provision too is merely declaratory of longstanding equitable principles (*see e.g. Ocean*, 240 NY at 47).

As the Appellate Division majority pointed out, Allstate's plight here results from its own failure "to insist on the resolution of its subrogation claim against the tortfeasor for APIP payments as part of a global settlement of the personal injury claims" (305 AD2d at 975). Nothing required Allstate to acquiesce, as it did, in a settlement between Walker and Stein in which all the consideration went to Walker and none to Allstate. Allstate was, by virtue of subrogation, entitled to the portion of Walker's recovery that is allocable to her claim for "extended economic loss." At the February 20, 2001 conference Allstate's counsel seemed to recognize this, stating to the court that "the plaintiff has been made aware of the possible subrogation claim in the amount of 43 thousand dollars." But Allstate never followed up the implied threat to recover its $43,000 from the settlement proceeds that Walker received, choosing instead to bring a time-barred action against Stein.

Accordingly, the order of the Appellate Division should be affirmed, with costs.

Chief Judge KAYE and Judges G.B. SMITH, CIPARICK, ROSENBLATT, GRAFFEO and READ concur.

Order affirmed, with costs.