939 A.2d 312

William VALORA, Jr., as Parent and Natural Guardian
of Benjamin Valora and William Valora, Jr., In
his own Right, Appellees,

v.

PENNSYLVANIA EMPLOYEES BENEFIT
TRUST FUND, Appellant.

Supreme Court of Pennsylvania.

Argued May 8, 2006.

Decided Dec. 27, 2007.

Richard Kirschner, Esq., for Pennsylvania Employees Benefit Trust Fund (PEBTF).

James DeCinti, Esq., Richard C. Angino, Esq., Daryl Edwin Christopher, Harrisburg, for William Valora, Jr.

BEFORE: CAPPY, C.J., and CASTILLE, NEWMAN, SAYLOR, EAKIN, BAER and BALDWIN, JJ.

## OPINION

Justice CASTILLE.

We granted review in this healthcare subrogation matter to determine whether its resolution should be guided exclusively by the contractual provisions of the Pennsylvania State Police Handbook, which conferred upon appellant Pennsylvania Employees Benefit Trust Fund ("PEBTF") a right of subrogation against a subscriber's recovery from a third party of healthcare expenses paid by appellant, or whether principles of equitable subrogation also play a role in the analysis. The Superior Court, in its dealing with the matter below, applied principles of equitable subrogation in the face of a contractual obligation. We agree that equitable subrogation principles are applicable, and therefore, we affirm.

Appellee, William Valora, retired from the Pennsylvania State Police on April 12, 1991. Following retirement, pursuant to the terms of the collective bargaining agreement between the Commonwealth of Pennsylvania and the Fraternal Order of Police, appellee continued to receive health care benefits. Appellant, PEBTF, administered the health care plan for retired Pennsylvania State Troopers, and Capital Blue Cross and Pennsylvania Blue Shield provided the health benefits.

On April 2, 1993, Benjamin Valora, appellee's son, was born with severe congenital hydrocephalus, as a result of which he is severely and profoundly mentally retarded and physically disabled. Upon his birth, Benjamin became a dependent under appellee's health plan. In March of 1995, appellee and his wife filed a medical malpractice action on Benjamin's behalf against Hershey Medical Center and several physicians involved in his birth. The matter proceeded to trial on August 18, 1997. Following a verdict, each party filed motions for post-trial relief. In October of 1997, the trial court granted a new trial, and the parties subsequently settled the action in December of 1997 for an undisclosed sum to be paid in the form of a structured settlement. Because Benjamin was a minor at the time of the settlement, appellee and his wife filed a petition in the trial court for approval of the settlement, which the trial court granted on April 17, 1998. The settlement agreement required the establishment of a special needs trust for Benjamin's benefit. The agreement also provided for monthly as well as various lump sum payments over the course of Benjamin's life, but did not specify an amount for past or future medical expenses.[1]

Six months later, on October 2, 1998, appellant contacted appellee's counsel by letter, asserting a potential subrogation claim against the proceeds of the medical malpractice action for medical expenses paid by appellant on behalf of Benjamin. The parties corresponded between November 27, 1998 and September 21, 2000 regarding the subrogation claim, which was valued allegedly at $210,633. Initially, appellee was unresponsive and uncooperative, with the result that appellant first threatened to and then did terminate appellee's health care coverage on October 15, 2000.[2] In December of 2000, appellee

1. According to appellant, the settlement provided for a total payment of $1.1 million, with $450,000 paid to appellee's attorney, $100,000 paid to Sentry Trust Company, trustee of the special needs trust, and the remaining $550,000 to be funded by an annuity and split among several lump sum payments and continuous monthly payments for Benjamin's benefit.

2. On January 23, 2001, appellant notified the trial court that it had reinstated appellee's health benefits.

filed a complaint in equity seeking to enjoin termination of his healthcare benefits. Appellant filed an answer, new matter and counterclaims against appellee, asserting its subrogation claim. The parties submitted stipulated facts to the trial court, and the court heard argument on the subrogation issue.

On January 17, 2002, the trial court issued its decision finding that appellant had a right of subrogation against the proceeds of the medical malpractice action. The court noted that appellee is a subscriber within the meaning of his health-care plan, and that the State Police Handbook contained the following subrogation clause applicable in this instance:

Subrogation is a means of containing the costs of health care by requiring those responsible for injuring Subscribers to pay for their medical expenses.

To the extent that benefits for Covered Services are provided or paid under this program, the plan will be subrogated and succeed to any rights the Subscriber may have for recovery of expenses against any person or organization. This right of the Plan does not apply to other health insurance policies issued to the Subscriber, and it does not apply where subrogation is prohibited by law.

You are required to pay the Plan amounts recovered by suit, settlement or otherwise from any third party or his insurer to the extent of the benefits provided or paid under this program.

You are required to take such action, furnish such information and assistance, and execute such papers as the Plan may request to facilitate enforcement of its rights. You will take no action prejudicing the rights and interests of the Plan.

Trial Ct. Op. at 4. Based upon this clause, the trial court found that appellant had a right of subrogation against the malpractice settlement, and that there was no case law barring subrogation claims for medical expenses paid on behalf of minors covered on their parents' medical insurance. The court concluded: "[Appellee] received a benefit from [appellant], a benefit that is easily calculable. Therefore, we find

that [appellee] is contractually and ethically obligated to [appellant] through its subrogation rights for the amount of calculated medical benefits." *Id.* at 5.

The trial court then turned to appellee's argument that appellant had waived its contractual right to subrogation by failing to raise its claim until after the case was settled. The court cited to the Commonwealth Court's decision in *Humphrey v. Workmen's Comp. Appeal Bd. (Supermarket Service),* 100 Pa.Cmwlth. 33, 514 A.2d 246 (1986), for the proposition that a subrogation claim must be asserted during the pendency of the underlying proceedings. Here, the court noted, appellant provided its first notice of its subrogation rights three and one-half years after the medical malpractice action had commenced, more than a year after trial, ten months after the action settled, and six months after the court approved and sealed the settlement. The court found that appellee had no affirmative duty to give appellant notice of the settlement of the malpractice action, but rather, it was appellant's burden to make inquiries into the settlement or possibility of settlement as the action progressed. Finding that appellant failed to exercise reasonable diligence, the court held that appellant had waived its right to subrogation.

Appellant appealed to the Superior Court, arguing, *inter alia,* that the trial court had erred in concluding that appellant's lack of reasonable diligence resulted in the waiver of its subrogation claim. Appellant maintained that the trial court also erred in relying on workers' compensation cases for the principle that a claim not asserted during the pendency of the underlying action is waived because, in the area of workers' compensation, employers and their insurers are automatically notified of pending suits. The Superior Court rejected both arguments, finding persuasive the Commonwealth Court's decision in *Independence Blue Cross v. Workers' Comp. Appeal Bd. (Frankford Hosp.),* 820 A.2d 868 (Pa.Cmwlth.2003). In that case, Independence Blue Cross paid medical bills on the claimant's behalf, but did not raise the question of subrogation until fourteen months after the claimant settled with her employer. The Commonwealth Court held that Independence

Blue Cross waived its contractual right to subrogation due to its failure to exercise reasonable diligence, even though Independence Blue Cross had no affirmative notice of the settlement of the underlying action.

The Superior Court determined that appellant here was in the same position as Independence Blue Cross with relation to the settlement agreement:

Appellant herein had been paying not insignificant benefits for the child for more than five years before it exercised what would be considered due diligence and investigated the possibility of a subrogation interest. Appellee did nothing to hide the fact he had filed a law suit or was negotiating a settlement, and nothing in the contract between the parties, drafted by appellant, placed an affirmative duty on appellee to notify appellant of such actions. We do not question whether appellant had a right to subrogation under the terms of the insurance contract[.] [T]he question is whether it acted with reasonable diligence in exploring that right in appellant's case.

*Valora ex rel. Valora v. Pa. Employees Benefit Trust Fund,* 847 A.2d 681, 684 (Pa.Super.2004). The panel agreed with the trial court that appellant should have known of the likelihood that a third party lawsuit would be filed in this case and, as a result, should have taken some action to explore the matter and assert its subrogation rights, given that appellant, as an administrator of several health plans, routinely deals with subrogation claims. Particularly in this instance, where appellant made inordinately large payments over an extended period of time, the court held that appellant should have and could have, through the exercise of reasonable diligence, discovered the underlying malpractice action and asserted its claim in a timely fashion.

■ This Court granted review, but specifically limited to two of the six issues upon which appellant sought review: (1) whether the Superior Court erred as a matter of law when it ignored appellant PEBTF's **contractual** right to subrogation and treated this as a case of **equitable** subrogation; and (2) whether the Superior Court erred as a matter of law when it

relied upon precedent under the Workers' Compensation Act to arrive at its conclusion that PEBTF was required to pursue its subrogation rights diligently. As both of these issues present pure questions of law, our review is plenary. *See, e.g., Tire Jockey Serv., Inc. v. Commonwealth, Dept of Envtl. Prot.,* 591 Pa. 73, 915 A.2d 1165, 1186 (2007); *Pennsylvania Tpk. Commn. v. Commonwealth,* 587 Pa. 347, 899 A.2d 1085, 1094 (2006); *In re Adoption of J.E.F.,* 587 Pa. 650, 902 A.2d 402, 407 (2006).

As to the first issue, appellant argues that the lower courts correctly found that appellant has a clear contractual right to subrogation arising out of the State Police Handbook. Given this clear right, appellant argues that appellees breach of that contract is beyond dispute: he settled the malpractice litigation on Benjamin's behalf, but refused to reimburse appellant for the medical benefits that settlement paid to him. According to appellant, appellee thereby received double payment for Benjamin's medical expenses, first from PEBTF and then from the settlement with Benjamin's medical providers. Appellant asserts that the lower courts effectively approved this double payment when they erroneously refused to enforce appellant's right to subrogation. Appellant further takes issue with the Superior Courts finding that nothing in the State Police Handbook placed an affirmative duty on appellee to notify PEBTF of any pending litigation. Pointing to other language in the Handbook stating, You will take no action prejudicing the rights and interests of the Plan, appellant maintains that this language placed a burden on appellee to be mindful of PEBTFs subrogation rights, a duty that appellee breached by concealing the existence and settlement of Benjamin's litigation.

Appellant argues that the concept of contractual subrogation is well-entrenched in Pennsylvania law, citing to *Illinois Automobile Ins. Exchange v. Braun,* 280 Pa. 550, 124 A. 691 (1924). There, the insureds' truck was damaged in a collision with a railroad train. The insureds simultaneously sued both their insurer, the Illinois Automobile Insurance Exchange, and the railroad. Following trial against the Insurance Exchange,

the insureds secured a judgment for damages to the truck only. The insureds then settled the action against the railroad, an action encompassing damage to the truck and its contents; the settlement produced a payment of $750 to the insureds, but "a verdict by agreement" in favor of the railroad. The Insurance Exchange was aware of the action against the railroad, but was not apprised of settlement negotiations. When the Insurance Exchange learned of the settlement with the railroad, it sued the insureds, seeking subrogation for the amount paid to the insureds under their policy. This Court held that: "Under conditions such as those contained in the policy before us, an insured cannot settle with the one causing him loss, except with the acquiescence of the insurance company without putting in peril his status with the latter." *Id.* at 693. Appellant contends that this is precisely what appellee did in this instance.

In addition, appellant argues that the language of the State Police Handbook is straightforward and uncomplicated and clearly sets forth PEBTF's right to subrogation. Buttressing appellee's obligation to appellant is, in appellant's view, the language of the settlement agreement that appellee signed in Benjamin's medical malpractice action, which stated that: "The undersigned hereby agrees ... to satisfy any and all liens that have been asserted and/or which could be or may be asserted for reimbursement of any medical benefits or other benefits provided to the undersigned by a third party...." According to appellant, this language leaves little doubt that appellee and his counsel were aware of his obligation to satisfy PEBTF's subrogation rights. The language of the settlement agreement, appellant asserts, provides a corroboration of the contractual right to subrogation, which the lower courts ignored or misconstrued.

Appellant next takes issue with the Superior Courts reliance on a workers compensation case, *Independence Blue Cross, supra,* to reach the conclusion that PEBTF did not pursue its subrogation rights with reasonable diligence. The subrogation claim in *Independence Blue Cross* again arose out of a workers' compensation claim under Section 319 of the Work-

ers' Compensation Act, 77 P.S. § 671. The *Independence Blue Cross* Court noted that Section 319 requires that subrogation rights be established either by contract or at the time of the workers' compensation hearing. Finding that there was no agreement for subrogation, the court found that Independence Blue Cross waived its claim by failing to assert it at the compensation hearing. Thus, based upon the statutory requirement that a subrogation agreement must exist or the subrogation claim must be raised at the time of the compensation hearing, and finding neither event occurred, the court rejected Independence Blue Cross's subrogation claim.

Appellant asserts that the decision in *Independence Blue Cross* turned upon the statutory language unique to the Workers' Compensation Act and upon two critical findings—that no contract existed and that Independence Blue Cross failed to raise its subrogation claim at the compensation hearing despite the absence of evidence that Blue Cross lacked notice of the compensation proceeding. Appellant argues that the matter *sub judice* is fundamentally distinguishable in that it does not implicate Section 319 of the Workers' Compensation Act or a similar statutory provision, there are two separate contracts recognizing the right to subrogation, and it is undisputed that PEBTF did not have notice of the malpractice litigation. Further, appellant claims that from a public policy point of view, workers' compensation precedent should not apply to non-workers' compensation matters because in compensation cases, the employer and insurer are routinely notified as soon as an employee files a claim of a job-related injury. Appellant posits that it makes sense, given the notice of injury, that a compensation carrier cannot be permitted to sit on its rights and waives its subrogation claim if it does so. By contrast, PEBTF argues, it is not automatically notified when one of its plan participants files a tort action, but instead receives notice only when a party provides that notice, which appellee failed to do in this instance.

Appellee counters that the trial court's determination that PEBTF failed to exercise reasonable diligence to protect its right to subrogation was a question of fact for the fact finder,

which cannot be disturbed on appeal because appellate review is limited to determining whether the trial court committed an error of law. Thus, appellee claims that the issue under review is beyond this Court's standard of review. We may dispose of this preliminary argument summarily, for it appears that appellee clearly is mistaken. The limited issue before this Court is not whether appellant in fact exercised reasonable diligence, but rather whether reasonable diligence (an equitable concept) is relevant at all, *i.e.*, whether appellant's contractual right to subrogation could be waived by its failure to exercise reasonable diligence in asserting the right. Our decision of the purely legal issue of whether the lack of reasonable diligence may undermine or eliminate a contractual subrogation right does not necessarily encompass the subsidiary and contingent question of whether the party asserting a subrogation right in fact exercised reasonable diligence.

Appellee's remaining arguments do not address appellant's issues head-on. First, appellee argues that, based upon *Independence Blue Cross*, the Superior Court properly found that PEBTF's failure to assert its subrogation claim until after the settlement of the underlying malpractice action constituted a waiver of the claim for failure to exercise reasonable diligence. The crux of this argument is that appellant failed to act within a reasonable amount of time in that the subrogation claim was asserted, as previously noted, more than five years after Benjamin's birth, more than three years after the malpractice action was filed, more than a year after trial, ten months after the matter settled, and nearly six months after the trial court approved the medical malpractice settlement. Comparing this delay to the fourteen-month delay that resulted in waiver in *Independence Blue Cross*, appellee concludes that, because PEBTF failed to take action for more than five years, it therefore clearly did not exercise reasonable diligence.

Appellee's second argument is that the State Police Handbook did not require him to notify PEBTF of the malpractice action, but rather merely required him to assist PEBTF if requested that he do so. Appellee quotes the relevant provision: "You are required to take such action, furnish such

information and assistance, and execute such papers **as the Plan may request** to facilitate enforcement of its rights" (emphasis added). Appellee argues that there is no allegation or evidence that he failed to do anything that PEBTF requested of him, and that the record is replete with evidence that PEBTF failed to take any action to assert its own rights. The Handbook, according to appellee, places any affirmative duty to take action on appellant, not on appellee. Further, appellee claims without basis that it is commonplace for an insured not to read an insurance policy, and that he had no legal obligation to read his Handbook. Appellee adds that PEBTF is more versed in the area of subrogation and, by its own admission, employs experienced attorneys to identify potential subrogation claims and initiate claims where appropriate. Thus, appellee contends that the burden to pursue its claim rested with appellant, and not with parents dealing with the everyday issues involved in caring for a severely handicapped child. Finally, appellee claims that the settlement in the malpractice action did not contemplate any payments to PEBTF because the language of the settlement agreement reveals that no money was paid for past medical expenses; therefore, there is no fund of money against which appellant could have a proper subrogation claim.

In a reply brief, appellant disputes appellee's argument that no money was paid for past medical expenses. According to appellant, appellee's complaint in the malpractice action alleged that he had incurred and would continue to incur considerable expenses for Benjamin's treatment. Because appellee settled the malpractice claim, appellant argues, he necessarily recovered for past and future medical bills, as they were part of the damages initially sought in the malpractice action. In addition, focusing on different and broader language from the Handbook, PEBTF claims that appellee did have an affirmative duty to protect its subrogation rights arising out of language contained in the paragraph covering subrogation: "You will take no action prejudicing the rights and interests of the Plan." Appellant argues that appellee's counsel, an experienced personal injury lawyer, understood

the significance of the subrogation language and that failing to notify appellant of the malpractice litigation would prejudice PEBTF's subrogation rights.

■ At the outset, we agree with both lower courts that PEBTF had a contractual right to subrogation based upon the language of the Handbook, which is clear and unambiguous: "To the extent that benefits for Covered Services are provided or paid under this program, the plan will be subrogated and succeed to any rights the Subscriber may have for recovery of expenses against any person or organization." It is undisputed that appellee was bound by the terms of the Handbook; therefore, appellant had a colorable contractual subrogation claim against the proceeds of the malpractice settlement.

Initially, we will address the second issue accepted for review—whether workers' compensation precedent governs this non-workers' compensation paradigm case—as it may be summarily resolved. We agree with appellant that the workers' compensation cases are inapposite. The law of workers' compensation consists of a unique and comprehensive statutory scheme which, as relevant here, provides employers and their insurers with timely notice of any injury that may give rise to a subrogation claim. The same is not true in the context of insurers providing medical benefits to individuals who may or may not pursue an action against a third party tortfeasor. Thus, the subrogation waiver doctrine employed by Commonwealth Court applicable in the workers' compensation arena is not sufficient support, on its own, for the decision below.

Turning now to the primary issue of whether a contractual subrogation claim can be defeated on equitable grounds, i.e., by a lack of reasonable diligence in pursuing the claim, we note that this Court has long recognized that the doctrine of subrogation has its origins in equity, not in contract law:

> [T]his Court and intermediate courts have made clear that a subrogation claim, in substance, is equitable in nature, and therefore does not sound in assumpsit. For example, in *Jacobs v. Northeastern Corp.*, 416 Pa. 417, 206 A.2d 49 (1965), this Court quoted the United States Supreme Court

indicating "[t]he right of subrogation is not founded on contract. It is a creature of equity; is enforced solely for the purpose of accomplishing the ends of substantial justice; and is independent of any contractual relationship between the parties." *Id.* at 53 (quoting *Memphis & Little Rock R.R. v. Dow,* 120 U.S. 287, 301–02, 7 S.Ct. 482, 30 L.Ed. 595 (1887)); *see also Gildner v. First Nat. Bank & Trust Co.,* 342 Pa. 145, 19 A.2d 910, 915 (1941) ("The doctrine of subrogation was adopted from the civil law and is based not on contract but on considerations of equity and good conscience."); *Furia v. City of Philadelphia,* 180 Pa.Super. 50, 118 A.2d 236, 238 (1955) ("Subrogation is an equitable doctrine and its basis is the doing of complete, essential and perfect justice between all parties without regard to form."); *Roush v. Gelnett,* 31 Pa. D. & C.4th 420 (Com.Pl.1996) ("[T]he doctrine of subrogation is based on considerations of equity and good conscience . . . to promote justice . . . [and] is granted as a means of placing the ultimate burden of the debt on the person who should bear it. It is not a matter of contract or privity").

*Employers Ins. of Wausau v. Commonwealth, Dep't of Transp.,* 581 Pa. 381, 865 A.2d 825, 831–32 (2005).

The issue in *Wausau* was jurisdictional in nature—whether the Board of Claims had jurisdiction over a subrogation claim that the parties alleged arose out of a contract. Nonetheless, this Court's reaffirmation of the settled recognition that an equitable subrogation claims exist outside the contours of a contract is pertinent here. In *Wausau,* we determined that the Board of Claims, which has exclusive jurisdiction over claims against the Commonwealth arising out of its contracts, had jurisdiction over an equitable subrogation claim because that claim, while not founded in substantive contract law, nevertheless arose in the context of a contract with the Commonwealth. Although the issue presented in *Wausau* is distinct from the issue presented here, the teaching concerning the nature of a subrogation claim remains significant.

A right to subrogation, then, may arise as a result of a contractual reservation or as a matter of equity, if no such

specific reservation exists. When the subrogation claim arises out of a contract, Pennsylvania courts have long held that equitable principles continue to apply: "[S]ubrogation is to be accorded upon equitable principles even though the right thereto, as authorized by statute in respect of policies of insurance is contractually declared." *Roberts v. Fireman's· Ins. Co. of Newark, N.J.*, 376 Pa. 99, 101 A.2d 747, 750 (1954) (citation omitted); *see also Employers Mut. Liab. Ins. Co. of Wis. v. Melcher*, 378 Pa. 598, 107 A.2d 874, 875–76 (1954) (subrogation claim is necessarily based on equities but is buttressed by existence of contractual right to subrogation); *Cerankowski v. State Farm Mut. Auto. Ins. Co.*, 783 A.2d 343, 347 (Pa.Super.2001), *alloc. denied*, 568 Pa. 692, 796 A.2d 977 (2002) (even if contractually declared, right to subrogation is regarded as based upon and governed by equitable principles); *Mellon Bank, N.A. v. Natl. Union Ins. Co. of Pittsburgh, PA*, 768 A.2d 865, 871 (Pa.Super.2001) (in Pennsylvania, subrogation is equitable in nature, regardless of any applicable contractual language); *Nationwide Mut. Ins. Co. v. Lehman*, 743 A.2d 933, 941 (Pa.Super.1999) (right to subrogation governed by equity notwithstanding contractual right); *Daley–Sand v. W. Am. Ins. Co.*, 387 Pa.Super. 630, 564 A.2d 965, 970 (1989) (equitable nature of subrogation is not altered by contractual language regarding subrogation). Under this substantial precedent, the fact that appellant's right to subrogation stems from a contract does not render equitable considerations irrelevant.

Notably, the majority of high courts in other jurisdictions that have squarely addressed the issue in the past two decades likewise have held that equitable principles apply to instances involving contractual rights of subrogation. *See Ex parte Brock*, 734 So.2d 998, 1000 (Ala.1999) (subrogee cannot assert contractual right to subrogation until insured has been made whole); *Franklin v. Healthsource of Ark.*, 328 Ark. 163, 942 S.W.2d 837, 839 (1997) (court refused to uphold contractual subrogation provision where insured had not been made whole); *Wasko v. Manella*, 269 Conn. 527, 849 A.2d 777, 782 (2004) (contractual right to subrogation is merely declaration

of principles already existing at equity); *Wine v. Globe Am. Cas. Co.*, 917 S.W.2d 558, 564 (Ky.1996) (contractual subrogation is governed by equity); *Rausch v. Allstate Ins. Co.*, 388 Md. 690, 882 A.2d 801, 808 (2005) (though founded on contract, recovery on theory of conventional subrogation is nonetheless subject to principles of equity); *Medica, Inc. v. Atl. Mut. Ins. Co.*, 566 N.W.2d 74, 77 (Minn.1997) (terms of subrogation governed by equitable principles unless contract expressly provides that equities do not apply); *Turco v. Schuning*, 271 Neb. 770, 716 N.W.2d 415, 418 (2006) (equitable principles apply even when subrogation right is based on contract); *Contl W. Ins. Co. v. Swartzendruber*, 253 Neb. 365, 570 N.W.2d 708, 711 (1997) (where contractual right of subrogation is merely the usual equitable right which would have existed in any event in the absence of a contract, equitable principles control subrogation); *Culver v. Ins. Co. of N. Am.*, 115 N.J. 451, 559 A.2d 400, 403 (1989) (equitable principles apply even when subrogation is based on contract, except as modified by specific contractual provisions); *Allstate Ins. Co. v. Stein*, 1 N.Y.3d 416, 775 N.Y.S.2d 219, 807 N.E.2d 268, 272 (2004) (subrogation is equitable in nature, not dependent on contract); *Abbott v. Blount County*, 207 S.W.3d 732, 734 (Tenn. 2006) (equitable principles apply to contractual subrogation); *Kanawha Valley Radiologists, Inc. v. One Valley Bank, N.A.*, 210 W.Va. 223, 557 S.E.2d 277, 282 (2001) (rules of equity apply even where subrogation right is based on contract unless terms of contract clearly and explicitly provide otherwise); *Petta v. ABC Ins. Co.*, 278 Wis.2d 251, 692 N.W.2d 639, 648 n. 15 (Wis.2005) (subrogation is recognized or denied based upon equitable principles notwithstanding existence of contractual right).[3]

Some courts have suggested that contractual subrogation is subject to equitable principles unless the contract clearly and

**3.** One state, Ohio, has consistently held that principles of equitable subrogation do not override clear and unambiguous contract provisions. *See, e.g., N. Buckeye Educ. Council Group Health Benefits Plan v. Lawson*, 103 Ohio St.3d 188, 814 N.E.2d 1210, 1215 (2004). South Dakotas high court has held that its law provides that equitable principles are not relevant to contract subrogation claims, but invited the

expressly provides that such equities do not apply (*Medica, Kanawha*) or except as modified by specific contractual provisions (*Culver*). None of these decisions provides specific guidance as to what contract language might eliminate equities from the equation. Nor do the authorities cited in the cases stand for the proposition that equitable provisions can be defeated by appropriate contract provisions. In any event, that issue is not presented in this appeal and it is best left for another day to determine whether and to what degree equitable principles may be overridden by particularized contractual provisions not present here.[4]

■ Given the nature of subrogation and its roots in equity, we believe that the lower courts did not err in looking beyond the contract terms in this case to equitable principles, such as appellant's reasonable diligence in pursuing and asserting its subrogation right. If it were otherwise—*i.e.*, if the right to subrogation were a contractual absolute and no equitable factors were relevant—a party entitled to contractual subrogation could sit on that right for months or even years after the injured party has received third party payment, then belatedly demand subrogation, with likely hardship to the injured party. Presumably, the applicable statute of limitations, four years on a contract action as per 42 Pa.C.S. § 5525, unless waived, would provide the sole restriction on the subrogees power to forward its claim. A doctrine that has its origins in equity, that is enforced solely for the purpose of accomplishing the ends of substantial justice, *Wausau, supra*, cannot contemplate that result.

Turning to the case *sub judice*, if equitable considerations were irrelevant, appellant could assert its contractual subrogation claim at any time up to the expiration of the statute of limitations. Meanwhile, appellee, the parent of a severely

legislature to change South Dakotas law. *Met Life Auto Home Ins. Co. v. Lester*, 719 N.W.2d 385, 388–89 (S.D.2006).

4. Although appellant argues broadly that equitable principles cannot override the contractual right to subrogation, appellant points to nothing in the State Police Handbook or the subrogation provision contained therein that purports to exclude consideration of equitable principles.

mentally and physically disabled child, likely has dedicated the structured settlement funds received in settlement of Benjamin's malpractice lawsuit into planning for Benjamin's expensive future care. Moreover, not having been notified of the subrogation claim at the time appellee settled with the medical malpractice defendants, appellee may not have contemplated that substantial expense in determining what was fair compensation for his sons injury, in light of the anticipated costs of his future care. Allowing for a post-settlement initial assertion of subrogation rights, in such an instance, may very well cause substantial hardship to the insured, and prejudice his position respecting the third party tortfeasor. The introduction of equitable principles, including a concept of reasonable diligence and prompt assertion of subrogation rights, can ensure that any such hardship is minimized or eliminated.

■ Here, appellant waited a substantial period of time before raising its subrogation claim—all the while knowing it was paying medical benefits for a child who suffered a severe birth injury that was likely to give rise to litigation. In addition, as appellee notes, by its own admission, appellant employs experienced attorneys to identify potential subrogation claims and initiate claims where appropriate; thus, appellant was in a position to discover its potential claim far in advance of the date the first notice of the claim was provided to appellee's counsel. By the time appellant forwarded its claim, the underlying malpractice settlement had been finalized. We, like the substantial majority of our sister courts, see no error in the lower courts employing equitable principles to determine that, under circumstances such as these, the right to subrogation can be waived or defeated.[5]

The decision of the Superior Court is affirmed.

Justice BALDWIN did not participate in the consideration or decision of this case.

5. As we have noted earlier in this Opinion, given the limited issues accepted for review, we do not pass upon the correctness of the lower courts' finding that appellant's conduct amounted to a lack of reasonable diligence in asserting its rights. In short, we are not reviewing the lower courts' weighing of equities. Rather, we hold only that there was

Former Justice NEWMAN did not participate in the decision of this matter.

Chief Justice CAPPY, and Justice SAYLOR and BAER join the opinion.

Justice EAKIN files a concurring opinion.

Justice EAKIN, dissenting.

I concur with the majority that our case law indicates equitable principles are relevant in addressing a contractual subrogation claim. Majority Op., at 588, 939 A.2d at 320–21. Although the majority notes the limited nature of our grant of review and that it is not passing upon the Superior Court's determination, *id.*, at 591 n. 5, 939 A.2d at 323 n. 5, the majority reaches a discussion of the equities favoring appellant's waiver of subrogation. *Id.*, at 588–91, 939 A.2d at 321–23. As such an examination is outside our limited grant of review, I express no comment on the factors relevant to those equities.

no legal error in the lower courts finding that the subrogation claim was subject to defeat on equitable grounds, here a finding that the right was not timely asserted.