J-A07009-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| TELETRACKING TECHNOLOGIES, INC. | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| FRANK J. GORI, MARK JULIANO, GENE NACEY, LORRAINE NACEY, STEPHEN P. NASH, BRIAN E. SCHULIGER, INSIGHT VENTURE MANAGEMENT, L.L.C. AND INSIGHT TTT, LLC. | |
| Appellee | No. 940 WDA 2014 |

Appeal from the Order Entered June 6, 2014
In the Court of Common Pleas of Allegheny  County
Civil Division at No(s): GD 11-006531

BEFORE:  BENDER, P.J.E., LAZARUS, J., and MUNDY, J.

MEMORANDUM BY LAZARUS, J.:                    **FILED MAY 28, 2015**

TeleTracking Technologies, Inc. (TeleTracking) appeals from the trial court's order:  (1) reaffirming its May 2011 order finding Insight Venture Management, L.L.C.'s (Insight) Fourth Offer to purchase the Minority Shareholders' stock is a *bona fide* offer; (2) enjoining TeleTracking from undertaking any further efforts to impede or prevent the closing on the Fourth Offer; and (3) directing TeleTracking, upon closing of the Fourth Offer, to register the transfer of shares in the name of Insight and issue new stock certificates in its name upon surrender of the Minority Shareholders' stock certificates.  Upon careful review, we affirm.

In a prior appeal, our Court aptly summarized the relevant facts of the underlying case as follows:

On April 7, 2011, TeleTracking instituted this lawsuit by filing a complaint against: 1) Frank J. Gori, Mark Juliano, Gene Nacey, Lorraine Nacey, Stephen P. Nash, and Brian E. Schuliger [the Minority Shareholders/Appellees] [and] 2) Insight []. The following allegations appear in the complaint. TeleTracking, a privately-held corporation in which the minority shareholders hold about twenty-seven percent of the stock, is a health-care information technology company that provides patient flow solutions to the health care industry.

Pursuant to a February 15, 1999 shareholder agreement, TeleTracking has a right of first refusal to purchase stock on the same terms and conditions as any *bona fide* offer that a shareholder receives for his shares. The pertinent provision of the shareholder agreement executed among TeleTracking and its shareholders, including the minority shareholders, is as follows:

In the event that any Shareholder shall receive a **bona fide written offer** to buy such Shareholder share, **which such Shareholder desires to accept**, such Shareholder shall give written notice thereto to the Corporation and the other Shareholders. The notice shall specify that number of shares (the "Offered Shares") the Shareholder intends to dispose of [and] the identity and the address of the person to whom the Shareholder proposes to dispose of such shares. Attached to the notice shall be a copy of the written offer, including the price, terms and conditions of the proposed disposition. The notice shall also be accompanied by a counterpart of the Agreement, executed by the proposed purchaser of the shares. **Appellant shall have an irrevocable and exclusive first option, but not an obligation, to purchase some or all of said shares on the same terms and conditions as set forth in said offer**, exercisable by giving written notice to the Shareholder proposing to sell within thirty (30) days after receipt of the notice of the proposed offer.

Exhibit 1 at § 1(a) (emphasis added).

Insight [is an] investment banking firm[]. On March 31, 2011, the minority shareholders indicated to TeleTracking that they

had received an offer from Insight, brokered through [another investment banking firm], for the purchase of their stock and that [they] intended to sell the stock to Insight. They proffered that TeleTracking had thirty days to match the offer under the shareholder agreement. The offer in question was the fourth offer that Insight had made for the stock, after TeleTracking had previously maintained that three prior offers from Insight were not *bona fide* and did not trigger its right of first refusal.

The complaint contained four counts. In count one, TeleTracking set forth a declaratory judgment cause of action. It sought a declaration that its obligation to match Insight's fourth offer for the minority shareholders' stock was not triggered under the shareholder agreement. Its position was two-fold. It claimed that the offer was not *bona fide* and also that it was impossible for it to purchase the shares on the same terms and conditions as those set forth in Insight's offer. In the second count, TeleTracking sought a preliminary injunction preventing the minority shareholders from selling the stock to Insight. At count three, TeleTracking averred that the minority shareholders had breached the shareholder agreement and, in count four, that Insight [] had tortuously interfered with that accord.

Simultaneously with the complaint, TeleTracking filed a motion for preliminary injunction. . . . After a hearing conducted on April 26, 2011, the trial court denied the motion for preliminary injunction, thereby resolving count two of the complaint in favor of Insight and the minority shareholders, Appellees herein.

On May 10, 2011, Appellees answered the complaint and moved for partial summary judgment as to count one of the complaint, which, as noted, sought a declaration that Appellant's right of first refusal was not triggered by Insight's fourth offer that was submitted to TeleTracking on March 31, 2011. Appellees' petition[ed] for a ruling that Insight's fourth offer was *bona fide* and that TeleTracking's matching rights and obligations under the shareholder agreement were triggered when that offer was delivered to TeleTracking on March 31, 2011.

The trial court ordered that discovery relevant to the summary judgment motion be conducted. After the submission of exhibits and briefs by the parties, on May 26, 2011, the trial court granted the motion for partial summary judgment. It ruled that the offer in question was a *bona fide* offer and that

Appellant's matching rights and obligations under the shareholder agreement were triggered when that offer was delivered to it on March 31, 2011. On June 22, 2011, the court entered a final order dismissing the two remaining breach of contract and tortious interference claims set forth in the complaint. TeleTracking assented, without prejudice, to the dismissal of the complaint since the breach of contract and tortious interference causes of action were premised upon the position that the offer in question did not trigger its right of first refusal.

***TeleTracking Technologies, Inc., v. Gori, et al.***, No. 1066 WDA 2011, at 1-5 (Pa. Super. filed April 10, 2013). TeleTracking appealed from the trial court's order, asserting that the court erred in determining that the Fourth Offer was "*bona fide*" and that it erred in concluding that the Fourth Offer was structured in such a way that TeleTracking could match it on the same terms and conditions as Insight.

On appeal, our Court affirmed the trial court's order dismissing TeleTracking's complaint finding Insight's offer to be *bona fide* as between the offeror and offeree (but does not require that the offer be *bona fide* in terms of its **effects** on TeleTracking) and that TeleTracking's matching rights and obligations under the shareholder agreement were triggered because TeleTracking had been given the right to purchase the shares under the same terms and conditions outlined in the stock purchase agreement that the Minority Shareholders had executed with Insight.

In coming to its decision, our Court found that TeleTracking had repeatedly obstructed the Minority Shareholders from selling their stock by not providing any information to potential purchasers in connection with

prospective sales, *id.* at 12, indirectly preventing any proposed purchaser from performing the requisite due diligence procedure applicable to stock transactions, *id.* at 13, intentionally failing to support any sales initiative by not collaborating in the sales processes, *id.*, and amending the company's bylaws and articles of incorporation so as to diminish the value of the minority shares and preclude the election of a board member by the minority shareholders. *Id.* at 14. In effect, TeleTracking's actions prevented the minority shareholders from consummating three prior offers to buy their company stock, as well as the instant Fourth Offer.[1]

TeleTracking proceeded to file a reargument petition in this Court, which was denied on June 7, 2013. Subsequently, TeleTracking filed a petition for allowance of appeal with the Pennsylvania Supreme Court, which was denied on December 27, 2013.

Following appellate disposition, the Minority Shareholders attempted to coordinate the transfer of stock with TeleTracking. However, TeleTracking again refused to cooperate, asserting that a provision in the parties' agreement requiring that the Minority Shareholders complete the sale with

_____

[1] The Fourth Offer, tendered on March 31, 2011, committed to the purchase of the Minority Shareholders' stock for $37.35 million, with $16,805,762 to be placed in escrow. The agreement also provided that Insight would be compensated $6 million if TeleTracking exercised its right of first refusal, representing a reimbursement fee for the substantial amount of time and money Insight had invested in the protracted stock purchase negotiations.

Insight within 120-days[2] had expired and that the Minority Shareholders were required to re-submit the offer, thus triggering compliance with the right of first refusal procedures once again. In April 2014, the Minority Shareholders filed a motion to enforce the trial court's prior determinations so that the Fourth Offer could be consummated. The court granted the motion and this appeal ensued.

On appeal, TeleTracking presents the following issue for our consideration:

> Whether the court erred as a matter of law in ruling that Defendants could close on an offer to purchase TeleTracking stock, when Defendants were bound by a Shareholder Agreement with a right of first refusal provision containing a 120-day closing deadline, and more than 120 days had passed since Defendants had presented the offer to TeleTracking.

_____

[2] This provision, found in the Shareholder Agreement, states:

> If neither the Corporation nor the remaining Shareholders individually or collectively elect to purchase all Offered Shares by the end of the twenty day Further Notice period, the Shareholder receiving such offer referenced in Section 1(a) [of the Shareholder Agreement] may accept the same and sell all Offered Shares in accordance with such offer and in accordance with the provisions of this Agreement if such sale is completed within one hundred twenty days (120) of the giving of notice to the Corporation, but if such sale is not completed within said one hundred twenty (120) day period, such shares shall not be sold without again complying with the terms of this Section.

Shareholder Agreement, 2/15/99, at ¶1(c).

The trial court cogently states that the majority shareholder of TeleTracking, who is also the CEO and chairman of the board of directors, has "use[d] the legal system to continue to exercise control over TeleTracking, thus preventing [the Minority Shareholders from] selling the shares . . . from which they had, for so long, seen no return on their investment in a successful corporation." Trial Court Opinion, 8/20/14, at 2-3. TeleTracking has repeatedly maintained that offers made to the shareholders, over the span of a decade, were not *bona fide*. When TeleTracking demanded that the shareholders withdraw the instant offer, its fourth, the shareholders refused, asserting that the offer was, in fact, *bona fide*. TeleTracking claims that Insight's offer did not provide a definite price and that its terms were structured to favor the seller and disadvantage the buyer; hence, the offer was not made in good faith. Despite its claims, the trial court settled these issues back in May of 2011 in favor of the Minority Shareholders, when it determined that the Insight offer *was bona fide* and that the shareholders' rights were triggered by the delivery of the offer, thus denying TeleTracking's request for an injunction. This decision was handed down just 57 days after the offer was presented to TeleTracking, well within the 120-day time frame set forth in the shareholder agreement.[3]

_____

[3] The remaining claims in TeleTracking's underlying lawsuit were finally dismissed 37 days before the 120-day closing deadline.

The trial court concluded that TeleTracking's intentional protraction of litigation underlying the sale of the stock by the Minority Shareholders is the exact reason why the shareholders were not able to consummate the sale within the prescribed timeframe provided in the parties' agreement. To permit TeleTracking to rely upon this provision now to prevent the sale of the stock is, in essence, using the contractual 120-day time limit as a sword, rather than a shield, when the provision's intent was to eliminate uncertainty about ownership of company stock when an offer has been tendered.[4]

Instantly, TeleTracking refuses to permit Insight to close on the deal with the Minority Shareholders unless the latter resubmits its offer and complies with the first refusal procedures again. In fact, a section of the instant stock purchase agreement provides that, as a condition of closing a sale, there be no pending litigation challenging the consummation of the transactions contemplated. Therefore, by its commencement of litigation

_____

[4] While TeleTracking claims that the time has expired within which the sale had to be consummated and that the minority shareholders were required to seek a stay pending appeal to stop the 120-day clock from running, it also acknowledged that "it was impractical for [the minority shareholders] to close given the appeal." N.T. Motion to Enforce, 6/3/14, at 21. This sentiment especially rings true when TeleTracking's initial appeal to this Court in 2011 asked us to resolve whether Insight's Fourth Offer even *triggered* TeleTracking's first refusal obligation. Moreover, as counsel for the minority shareholders argued at the motion to enforce hearing, TeleTracking refused to release control of the shares of shareholder Gene Nacey, and his wife, Lorraine, further frustrating any proposed sale. *Id.* at 29-33.

and endless pursuit of appeals, the company effectively created a stalemate in the transfer of stock between the Minority Shareholders and Insight.[5]

Because it is well established that a party who prevents performance creates an excuse for nonperformance, ***Iron Trade Products Co. v. Wilkoff Co.***, 116 A. 150 (Pa. 1922), the trial court correctly enforced its prior order directing the sale of the stock after the expiration of the 120-day time limit.  The trial court was well within its authority to grant the motion to enforce the sale of stock based upon equitable principles.  ***Goodwin v. Rodriguez***, 554 A.2d 6 (Pa. 1989); ***see also Valora v. Pennsylvania Employees Benefit Trust Fund***, 939 A.2d 312, 322 (Pa. 2007) (courts are empowered to examine methods and timing that party to contract resorts to in attempting to enforce specific terms of agreement).  Thus, we affirm.

Order affirmed.

MUNDY J., joins the majority.

BENDER PJE., files a Dissenting Memorandum.

_____

[5] The defendants sought a third-party purchase for their shares due to the fact that for several years they saw no return of capital on their shareholdings despite the company's monetary success.  N.T. Motion to Enforce, 6/3/14, at 4.

J-A07009-15

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 5/28/2015