Stein, J.
(concurring). I am in complete agreement with the majority’s analysis regarding plaintiff Aetna Health Plans’ inability to recover under the No-Fault Law and related regulations. However, I write separately to address the dissent’s analysis of Aetna’s equitable subrogation claim. In my view, Supreme Court properly dismissed the complaint because Aet-na’s claims are inconsistent with, and would improperly supplant, the tightly-regulated and comprehensive no-fault statutory scheme crafted by the legislature, and because the principles of equitable subrogation do not apply under the circumstances presented here. I, therefore, concur with the majority’s conclusion that the Appellate Division’s order should be affirmed.
As the majority aptly explains, the no-fault insurance statutes and regulations provide a comprehensive framework for the resolution and payment of no-fault benefits in connection with covered injuries. Those statutes and regulations provide no basis for a health maintenance organization (HMO) to recover from a no-fault insurer. Thus, under circumstances in which an HMO attempts to recover from a no-fault insurer for payments made on behalf of their mutual insured, the doctrine of equitable subrogation does not apply.
The State Insurance Department’s Office of General Counsel has issued an informal opinion on the topic of subrogation by an HMO (such as Aetna) (see Ops Gen Counsel NY Ins Dept No. 08-01-08 [Jan. 2008] [HMO as No-Fault Subrogee], available at http://www.dfs.ny.gov/insurance/ogco2008/ rg080108.htm, cached at http://www.nycourts.gov/reporter/ webdocs/HMOasNo-FaultSubrogee.pdf).[1] In its opinion, the Insurance Department stated that an “HMO is not entitled to subrogate its recovery pursuant to New York Insurance Law *584 § 5105(a) . . . , because it does not fit the definition of‘insurer’ under the no-fault insurance law scheme.” The Insurance Department reasoned that an HMO is not required to pay for the insured’s treatment in the first place because it is permitted to exclude coverage for treatment that is recovered or recoverable under no-fault (see 11 NYCRR 52.16 [c] [8]). Further, the key no-fault regulation permits direct payment from no-fault insurers to medical providers (see 11 NYCRR 65-3.11) and, in most situations, the insured assigns the benefits to such providers, which then undertake the responsibility of seeking payment from the no-fault insurer.
Essentially, based on its interpretation of the no-fault statutes and regulations, the Insurance Department has advised insurers that an HMO should refuse to pay for any treatment covered under no-fault because, under the no-fault scheme, the HMO will not be able to subrogate its recovery if it makes such payments. While not binding on courts, such informal opinions and interpretations of insurance law are entitled to deference unless irrational or unreasonable, due to the Superintendent’s “ ‘special competence and expertise with respect to the insurance industry’” (A.M. Med. Servs., P.C. v Progressive Cas. Ins. Co., 101 AD3d 53, 64 [2d Dept 2012], quoting Matter of New York Pub. Interest Research Group v New York State Dept. of Ins., 66 NY2d 444, 448 [1985]; see also Financial Services Law § 202 [a]).
As the dissent notes, the doctrine of equitable subrogation can be
“broad enough to include every instance in which one party pays a debt for which another is primarily answerable and which in equity and good conscience should have been discharged by the latter, so long as the payment was made either under compulsion or for the protection of some interest of the party making the payment, and in discharge of an existing liability” (Gerseta Corp. v Equitable Trust Co. of NY, 241 NY 418, 425-426 [1926]).
However, unlike the traditional equitable subrogation situation — involving an active wrongdoer (tortfeasor) and an innocent insurer — equity does not dictate the outcome of who should pay for medical treatment under the no-fault scheme when the dispute is between two types of insurers, neither of which caused the physical injuries. Moreover, Aetna’s pay *585 ments were not made to discharge an existing liability because, according to the Insurance Department opinion and pursuant to 11 NYCRR 52.16 (c) (8), an HMO has no obligation to reimburse for no-fault recoverable treatment.
“Subrogation allocates responsibility for the loss to the person who in equity and good conscience ought to pay it, in the interest of avoiding absolution of a wrongdoer from liability simply because the insured had the foresight to procure insurance coverage” (North Star Reins. Corp. v Continental Ins. Co., 82 NY2d 281, 294 [1993]; see Millennium Holdings LLC v Glidden Co., 27 NY3d 406, 414 [May 5, 2016]). Thus, in the typical example of subrogation, an insurer attempts to recoup covered medical expenses from the tortfeasor who caused the insured’s injuries and need for treatment in the first place (see e.g. ELRAC, Inc. v Ward, 96 NY2d 58, 75-76 [2001]; Teichman v Community Hosp. of W. Suffolk, 87 NY2d 514, 521-522 [1996]).[2] In such circumstances, as a matter of fairness, an insurer who was compelled by contract to pay for medical treatment required by its insured due to the negligent or intentional actions of another ought to be able to obtain reimbursement from the party who was at fault and caused those damages (see Allstate Ins. Co. v Stein, 1 NY3d 416, 422 [2004], citing Ocean Acc. & Guar. Corp. v Hooker Electrochemical Co., 240 NY 37, 47 [1925]).
Here, however, defendant Hanover Insurance Company is Luz Herrera’s no-fault insurer, not the wrongdoer (i.e., the third-party tortfeasor who caused the underlying loss or injury to Herrera). It does not appear that either Aetna or the medical providers are completely without fault concerning the billing issue with which we are now confronted. The medical providers submitted their bills to the incorrect insurer, creating the false impression that Aetna’s policy covered Herrera’s treatment, when her injuries were actually related to her no-fault accident. For its part, Aetna continued to pay those bills, without notifying the providers of this mistake, even after Aetna learned that they should have been submitted to Hanover. On the other hand, no argument is made that Hanover is responsible for the incorrect billing. Aetna has apparently *586 not sought to recoup directly from the tortfeasor Aetna’s payments on Herrera’s behalf, instead relying on a lien it placed against any recovery by Herrera in her action against that party.[3] While purporting to sue as the subrogee of Herrera, as its insured, Aetna is actually suing to recover for its own losses due to incorrect billing, rather than Herrera’s losses (see Federal Ins. Co. v Spectrum Ins. Brokerage Servs., 304 AD2d 316, 317 [1st Dept 2003]). That is not true subrogation.
As the dissent suggests, it would certainly be easier for Aetna to proceed against Hanover for all of the bills paid on Herrera’s behalf, rather than pursuing multiple medical providers for repayment of each of their bills. However, we have long held that “equity will not entertain jurisdiction where there is an adequate remedy at law” (Boyle v Kelley, 42 NY2d 88, 91 [1977]; see Lichtyger v Franchard Corp., 18 NY2d 528, 537 [1966]; Lewis v City of Lockport, 276 NY 336, 342 [1938]). Thus, while equity is, indeed, a flexible concept, it may not be invoked when an adequate remedy exists at law, merely because a party would prefer an easier route to recovery.
In that regard, we emphasize that Aetna may seek recovery from the medical providers that improperly billed Aetna for treatment that should have been covered by Hanover. Contracts between Aetna and the treatment providers — which are not in the record before us — may even spell out the right to, and procedures for, such clawbacks. The medical providers could then submit their bills to Hanover for payment under Herrera’s no-fault policy.[4] The availability to Aetna of this legal remedy renders inappropriate the expansion of equitable subrogation into the complex and comprehensive no-fault scheme. Finally, providing an equitable remedy could create additional burdens on the courts — which is contrary to one of the purposes of the No-Fault Law (see Hospital for Joint Diseases v Travelers Prop. Cas. Ins. Co., 9 NY3d 312, 317 [2007]) — and would complicate and add confusion to that statu *587 tory and regulatory scheme. Accordingly, the lower courts properly concluded that Aetna’s complaint should be dismissed.

. The former Insurance Department now falls within the Department of Financial Services (see Financial Services Law § 102), which has posted the former agency’s informal opinions on its website.

. Subrogation may also be available under a contract, which is distinguishable from equitable subrogation. In addition, there may be equitable subrogation situations outside the no-fault context in which an insurer seeks recovery from another party who is not a wrongdoer, but we have no occasion to address such situations here.

. The validity of that lien, which has been asserted in a separate action, is not before us.

. Under this scenario, while Hanover might deny payment due to untimely submission (see 11 NYCRR 65-1.1), the medical providers would be the ones suffering the loss of payment, which would not be inequitable because they submitted the bills to the incorrect insurer in the first instance. This only highlights how permitting Aetna to recover via equitable subrogation would be inconsistent with the no-fault scheme, especially the insistence on timely resolution of claims (see e.g. Insurance Law § 5106 [a]; 11 NYCRR 65-1.1, 65-2.4 [b], [c]; 65-3.8 [c]).