32 A.3d 1261

Brenda JONES, Individually and on Behalf
of all Others Similarly Situated

v.

NATIONWIDE PROPERTY AND CASUALTY
INSURANCE COMPANY.

Appeal of Brenda Jones.

Supreme Court of Pennsylvania.

Argued May 10, 2011.

Decided Dec. 21, 2011.

220

Amy Daubert, Harrisburg, W. Christopher Doane, Terrance A. Keating, PA Department of Insurance, for Amicus Curiae, Michael F. Consedine, Acting Pennsylvania Insurance Commissioner.

Thomas More Marrone, Thomas Martin, Feldman, Shepherd, Wohlgelernter, Tanner, Weinstock & Dodig, Philadelphia, for Brenda Jones.

Gilbert F. McKnight IV, Michael Richard Nelson, Nelson, Levine, deLuca & Horst, L.L.C., for Nationwide Property and Casualty Insurance Company.

Michael Lee Eidel, Julie Debra Goldstein, Fox Rothschild, L.L.P., Warrington, for Appellee Amicus Curiae, Harleysville Insurance Company.

Guillermo Emmanuel Sylianteng, for Appellee Amicus Curiae, Pennsylvania Defense Institute, et al.

BEFORE: CASTILLE, C.J., SAYLOR, EAKIN, BAER, TODD, McCAFFERY, ORIE MELVIN, JJ.

## OPINION

Justice BAER.

■ We granted review in this case to consider an issue of first impression regarding the legality of an insurance compa-

ny's practice of reimbursing, on a pro rata basis only, an insured's deductible from funds obtained in an insurer's subrogation action against a third-party tortfeasor. The insured argues that this practice violates the common law "made whole doctrine." As discussed in more detail below, the made whole doctrine provides generally that an insurance company cannot exercise its right of subrogation until its insured has been fully compensated or "made whole." As we conclude that the made whole doctrine does not apply to the collision coverage at issue in this case, we affirm the dismissal of appellant-insured's class action.

Although this Court regularly addresses questions involving uninsured and underinsured motor vehicle coverage (UM/UIM) and other types of bodily injury coverage under the Motor Vehicle Financial Responsibility Law (MVFRL), 75 Pa.C.S. §§ 1701–1799.7, we have not reviewed a question involving collision coverage in recent years. Accordingly, we briefly review the basics of this coverage.

As most vehicle owners understand, with collision coverage, an insured typically contracts with an insurance company to cover the cost of any damage to the vehicle above the amount of an agreed upon deductible. A deductible clause is defined as "[a] clause in an insurance policy exempting the insurer from paying an initial specified amount after an accident." The American Heritage Dictionary 227 (4th Ed.2001); *see also* Black's Law Dictionary 285 (6th Ed.1991) ("The portion of an insured loss to be borne by the insured before he is entitled to recover from the insurer."). Likewise, the policy at issue in this case defines a deductible as "the amount of loss to be paid by the insured. We pay for covered loss above the deductible amount shown in the Declarations." Nationwide Auto Policy, dated October 19, 2005, at D1. Accordingly, unlike a UM/UIM claim where the insured is not responsible for paying a deductible prior to recovery but may recover only up to the policy's specified coverage limits, an insured recovering under a collision coverage policy may recover the entire amount of the damage up to and including the total value of

the vehicle, after subtracting the amount of the deductible that the insured contracted to pay.

Not surprisingly, if an insured is willing to bear the risk of paying a higher deductible, her premiums will be reduced to reflect that the insurer will be responsible for covering less risk. Indeed, the MVFRL requires this reduction in premiums. 75 Pa.C.S. § 1792(b)(4) ("With the purchase of a $500 or greater deductible, there shall be an immediate commensurate reduction in rate for collision and comprehensive coverages. The reduction in rate shall be based on the insured's existing deductible level.").[1] Additionally, the MVFRL forbids insurers from issuing policies that do not include deductibles, and provides that policies must include a $500 deductible unless the insured "signs a statement indicating the insured is aware that the purchase of a lower deductible is permissible and that there is an additional cost of purchasing a lower deductible". 75 Pa.C.S. § 1792(b)(1). With these basic parameters in mind, we consider the case at bar.

---

1. The MVFRL provides in full in regard to deductibles as follows:

 (b) Mandatory deductibles.—

 (1) Every private passenger automobile insurance policy providing collision coverage issued or renewed on and after the effective date of this subsection shall provide a deductible in an amount of $500 for collision coverage, unless the named insured signs a statement indicating the insured is aware that the purchase of a lower deductible is permissible and that there is an additional cost of purchasing a lower deductible, and the insured agrees to accept it.

 (2) Under no circumstances may a private passenger automobile insurance policy provide a collision deductible in an amount less than $100.

 (3) Any person or entity providing financing to the purchaser of a motor vehicle or otherwise holding a security interest in a motor vehicle shall not be permitted to require the purchase of a deductible for less than $500 for collision and comprehensive coverages. Any financial institution, insurer, agent or other person or entity found to have violated this provision shall be required to reimburse the policyholder in an amount equal to the difference in premium and, in addition, shall be required to pay a civil penalty of $500 to the Department of Transportation for each violation.

 (4) With the purchase of a $500 or greater deductible, there shall be an immediate commensurate reduction in rate for collision and comprehensive coverages. The reduction in rate shall be based on the insured's existing deductible level.

75 Pa.C.S. § 1792.

On December 10, 2005, Appellant Brenda Jones was involved in an automobile accident with another driver that caused damage to Jones's vehicle. The facts as presented to this Court do not address any bodily injury resulting from the accident. Jones's insurance policy with Nationwide Property and Casualty Company (Nationwide) included collision coverage for the vehicle involved, subject to a $500 deductible. The policy also provided Nationwide with the right of subrogation.[2] Nationwide paid Jones for all damage to the vehicle, reduced by the $500 deductible.

Nationwide filed a subrogation claim against the other driver and recovered under the other driver's liability coverage. The recovery, while in excess of Jones's $500 deductible, was apparently only ninety percent of the amount Nationwide paid Jones under the collision coverage policy.[3] Pursuant to its practice, which mirrors an Insurance Department regulation, Nationwide paid Jones a pro rata share of the subrogation award by reimbursing her for ninety percent of her deductible, which amounted to $450.

Jones filed a class action against Nationwide claiming that Nationwide's uniform practice of pro rating reimbursements of

2. In relevant part, the Subrogation provision of the insurance contract provides:

> Subrogation. We have the right of subrogation under the: (a) Physical Damage ... coverages in this policy and its endorsements. This means that after paying a loss to you or others under this policy, we will have the insured's right to sue for or otherwise recover such loss from anyone else who may be liable. Also, we may require reimbursement from the insured out of any settlement or judgment that duplicates our payments. These provisions will be applied in accordance with state law.... We are not entitled to recover under Uninsured or Underinsured Motorist coverage until the insured has been fully compensated for damages.

Insurance Contract at G3.

3. As the Superior Court observed in its decision, the record, which does not include the subrogation proceedings between the relevant insurance companies, is silent regarding how or why the subrogation award amounted to less than Jones's total loss. The parties suggest that during subrogation proceedings the relevant percentage of each driver's fault is often determined and the subrogation award is based thereupon. Additionally, the parties do not discuss the total amount paid by Nationwide to Jones under the collision coverage policy for the damage to Jones's vehicle.

deductibles violated the made whole doctrine. The proposed class included "all Pennsylvania residents who are or have been insured under Pennsylvania policies of insurance issued by defendant that have deductibles applicable to collision damage coverage." Complaint at 3. Jones's complaint included several counts. First, Plaintiff claimed that the pro rata reimbursement constituted a breach of contract, arguing that the contract was subject to common law equitable principles such as the made whole doctrine. Jones also brought claims of bad faith pursuant to 42 Pa.C.S. § 8371, conversion, and unjust enrichment. All claims were based upon Jones's conclusion that Nationwide should have reimbursed her for her entire $500 deductible, despite the provision in the policy granting Nationwide subrogation rights. Jones also sought injunctive relief to stop Nationwide's practice of pro rata deductible reimbursement.

Nationwide filed preliminary objections in the nature of a demurrer. It observed that Nationwide's procedure of using pro rata reimbursement was consistent with a regulation of the Insurance Commissioner, 31 Pa.Code § 146.8(c), which provides in relevant part,

(c) Insurers shall, upon the request of the claimant, include the first-party claimant's deductible, if any, in subrogation demands. Subrogation recoveries shall be shared on a proportionate basis with the first-party claimant, unless the deductible amount has been otherwise recovered.

31 Pa.Code § 146.8(c). Moreover, Nationwide asserted that the pro rata reimbursement was consistent with the equitable principles underlying subrogation. It claimed that subrogation is allowed "to prevent double recovery and ensure that the party at fault, rather than an innocent party, be held responsible for the injury claimed." Preliminary Objections at 7 (quoting *Thompson v. W.C.A .B. (USF&G Co.)*, 566 Pa.420, 781 A.2d 1146, 1153 (2001)). Finally, it contended that the language of the policy provided Nationwide subrogation rights. *See* Insurance Contract at G3, *supra* note 2.

The trial court sustained Nationwide's preliminary objections without issuing an opinion. After Jones filed an appeal

and her Pa.R.A.P. 1925(b) concise statement of matters complained of on appeal, the trial court issued an opinion supporting its decision on a basis not raised by Nationwide. It concluded that Jones failed to exhaust administrative remedies under the Unfair Insurance Practices Act (UIPA), without identifying what those remedies entailed, and instead merely referenced the title section of the UIPA, 40 Pa.S.A. § 1171.1. Tr. Ct. Slip Op. at 3.

In the alternative, the trial court considered the merits of the case. It observed that the United States District Court for the Eastern District of Pennsylvania recently addressed a very similar argument in *Harnick v. State Farm Mutual Auto. Insurance,* 2009 WL 579378 (E.D. Pa. Mar 5, 2009).[4] The district court in *Harnick* acknowledged that the common law made whole doctrine "requires that an insured recover the full amount of his losses before his insurer may demand reimbursement for any payments previously made to the insured under an insurance policy," *id.* at *3, but implicitly found that Pennsylvania's regulatory scheme controlling automobile insurance modified the common law doctrine. The federal court concluded that 31 Pa.Code § 146.8(c), which provided for the pro rata subrogation distribution procedure, was within the authority delegated to the Insurance Department by the General Assembly pursuant to the UIPA. The court held that because the procedure is "specifically permitted by Pennsylvania's insurance regulations, [it] cannot violate the common law 'made whole' doctrine even assuming that the doctrine would in fact support a claim like that of [the] plaintiffs." *Id.* The federal court then reasoned, "[b]ecause the behavior does not violate the 'made whole' doctrine, the plaintiffs have failed to state a basis on which the Court could find a breach of the parties' contract." *Id.* Accordingly, based in part upon the federal district court's decision in *Harnick,* the trial court dismissed Jones's complaint in the matter now before us. Jones filed a supplemental Pa.R.A.P. 1925(b) state-

4. Although the plaintiff in *Harnick* appealed the decision to the United States Court of Appeals for the Third Circuit, that court decided to hold the case pending the appeal of the case at bar. *Harnick v. State Farm Mut. Auto. Ins. Co.,* No. 09–1942 (3d Cir. Dec. 4, 2009).

ment challenging the trial court's ruling based on the UIPA issue that had not been raised by Nationwide. The trial court did not file a supplemental opinion.

In a unanimous published opinion, the Superior Court affirmed the trial court's order but on different grounds. *Jones v. Nationwide Prop. and Cas. Ins. Co.*, 995 A.2d 1233 (Pa.Super.2010). The appellate court concluded that the trial court erred in finding that Jones should have pursued an administrative remedy under the UIPA, because the UIPA does not provide a private remedy. It additionally recognized that Jones did not seek relief under the UIPA. Nonetheless, the Superior Court adopted the analysis of the Eastern District Court's decision in *Harnick* and affirmed the trial court's order dismissing Jones's complaint because it concluded that she failed to assert a viable cause of action.

Jones appealed to this Court, and we granted review of the following issues:

(1) Does Pennsylvania law require that a party suffering damages be made whole before an insurer is entitled to subrogation?

(2) Does the Pennsylvania Insurance Commissioner have the authority to promulgate a regulation regarding allocation of subrogation proceeds between an insurance company and its insured following subrogation recovery?

(3) Is the Pennsylvania Insurance Commissioner's regulation allowing insurers to allocate subrogation proceeds on a pro rata basis void because it violates Pennsylvania substantive common law, the "made whole" doctrine?

*Jones v. Nationwide Prop. and Cas. Ins. Co.*, 607 Pa. 480, 8 A.3d 311 (2010).

▇▇▇ Jones's first issue presents a pure question of law regarding whether the pro rata reimbursement of the insured's deductible from the insurer's subrogation recovery in a collision coverage case violates the common law made whole doctrine.[5] As with all questions of law, this Court's review is

5. The question as framed by Jones is whether "Pennsylvania law require[s] that a party suffering damages be made whole before an

plenary. *See Bilt–Rite Contractors, Inc. v. The Architectural Studio*, 581 Pa. 454, 866 A.2d 270, 274 (2005). Given that the underlying decision involves the dismissal of the case on preliminary objections, we further observe "the standard of review for preliminary objections in the nature of a demurrer is limited; the question presented by the demurrer is whether, on the facts averred, the law says with certainty that no recovery is possible" *Id.*

Jones reasserts her claim that Nationwide's practice of reimbursing the insured's deductible from the insurer's subrogation only on a pro rata basis calculated upon the percent of the insurer's recovery from a third party violates the common law made whole doctrine. Relying on Superior Court and federal court cases applying Pennsylvania law, Jones asserts, "Pennsylvania law provides that an insurance company cannot exercise its right of subrogation until the insured has been fully compensated or 'made whole.' " Brief at 6 (citing *inter alia, Gallop v. Rose*, 420 Pa.Super. 388, 616 A.2d 1027, 1031 (1992); *Nationwide Mut. Ins. Co. v. DiTomo*, 330 Pa.Super. 117, 478 A.2d 1381, 1383 (1984); *Walls v. City of Pittsburgh*, 292 Pa.Super. 18, 436 A.2d 698, 701 (1981) (holding insurer's right to subrogation arises "only upon the insurer's showing that the sum of the insured's recovery from the insurer and from persons legally responsible for the injury exceeds the insured's loss.")). She observes that in *Valora v. Pa. Employees Benefit Trust Fund*, 595 Pa. 574, 939 A.2d 312, 321 (2007), this Court recognized the use of the made whole doctrine in other states. She further asserts that we held in *Valora* that, because subrogation is based in equity, even contractual subrogation rights are subject to equitable principles. *Id.*

Although Jones acknowledges that Pennsylvania courts have yet to apply the made whole doctrine to collision cover-

insurer is entitled to subrogation?" As noted by all parties and set forth below, Pennsylvania has applied the "made whole" doctrine repeatedly, and thus there is no dispute in this case that the doctrine applies, generally, as part of Pennsylvania common law. The interesting question raised by this case is whether the made whole doctrine applies to the case at bar, involving the pro rata reimbursement of the insured's deductible from the insurer's subrogation recovery.

age deductibles, she observes that because we have not spoken to the question, we have also not determined that it does not apply. She urges this Court to apply the doctrine broadly, as equity would demand. As support, she observes that the Supreme Court of Montana recently certified a class of automobile insureds seeking recovery of unrecovered losses, including deductibles, from their insurer's subrogation recovery. Reply Brief for Jones at 8 (citing *Ferguson v. Safeco Ins. Co. of America*, 342 Mont. 380, 180 P.3d 1164, 1168 (2008) (opining that when "either the [i]nsured or the [i]nsurer must to some extent go unpaid, the loss should be borne by the [i]nsurer for that is a risk the [i]nsured has paid it to assume.")). She argues that where Nationwide "brings a subrogation claim—her subrogation claim—in order to recover funds it has paid to its own insured, it must, upon recovery, make sure that she is 'made whole' by repaying any deductible before Nationwide dips its own hand into the recovery." Reply Brief for Jones at 11. She asserts that the insurer has assumed the risk of loss regardless of the deductible and that the insurer cannot consider her potential fault in determining the amounts distributed from the subrogation recovery, because her policy provides for payment regardless of fault. Jones also claims that the violation of the made whole doctrine, through the pro rata distribution process, results in a breach of contract.

In response, Nationwide avers that the made whole doctrine does not apply to this case because Jones is attempting to seek reimbursement from insurer's recovery for an uninsured loss—her deductible. It argues that Jones cannot provide any precedent for her claim that the made whole doctrine has been applied to allow the recovery of uninsured losses, including deductibles. Instead, Nationwide directs our attention to other jurisdictions that have rejected the application of the made whole doctrine in similar cases, as discussed below.

Specifically, Nationwide observes that Florida courts have rejected complaints brought by insureds seeking reimbursement of their collision deductible and other uninsured losses under the made whole doctrine. Brief of Nationwide at 7–8 (citing *Schonau v. GEICO Gen. Ins. Co.*, 903 So.2d 285, 287

(Fla.Dist.Ct.App. 4th Dist.2005) (Appellant's "proposed application of the 'made whole' doctrine would effectively eliminate this entire body of Florida subrogation law, by forcing an insurer to cover uninsured losses before the insurer can pursue a subrogation claim."); *Monte de Oca v. State Farm Fire & Cas. Co.*, 897 So.2d 471 (Fla.Dist.Ct.App. 3rd Dist. 2004)). Nationwide also discusses a decision from the Court of Appeals for the Ninth Circuit, where the court held that an insurer that pursues subrogation against a tortfeasor has no obligation to make the insured whole out of the proceeds, if the insured has not filed suit herself to recover from the tortfeasor. Brief of Nationwide at 8 (citing *Chandler v. State Farm Mutual Ins. Co.*, 598 F.3d 1115 (9th Cir.2010)). Relying upon *Chandler*, Nationwide claims that "an insured may not sit back and do nothing to assert its rights against the responsible party, and then expect to be made whole by the insurer who enforces its right of subrogation." Brief of Nationwide at 8. Nationwide also looks to a decision from Washington State, holding that the made whole doctrine does not apply where the insurer pursues a subrogation action and the insured seeks reimbursement of a deductible from the proceeds, in part because the deductible represents the amount of risk retained by the insured. Brief at 9 (citing *Averill v. Farmers Ins. Co. of Washington*, 155 Wash.App. 106, 229 P.3d 830 (2010)).[6]

**6.** Although we affirm the courts below based upon our conclusion that the made whole doctrine does not apply to collision coverage cases, we recognize that the parties devote substantial briefing to Nationwide's argument that the made whole doctrine does not apply to cases where the insurer, rather than the insured, is the party pursuing the subrogation action against the third-party tortfeasor. In support of its argument, Nationwide contends that the made whole doctrine typically applies where the insured takes on the risk of litigation and sues the tortfeasor; in such a case, the insured must be made whole before the insurer can make its subrogation claim against the insured's recovery from the tortfeasor. Nationwide argues that equity does not require the application of the made whole doctrine when the insured has not asserted a claim against the tortfeasor, as in this case where the action was brought by the insurer.

While we do not decide the merits of this argument, we acknowledge that Jones presents an argument refuting Nationwide's claim by noting that any rights Nationwide has in subrogation are based entirely on her

Nationwide further asserts that the application of the made whole doctrine to deductibles would undermine the public policy expressed in the MVFRL, which forbids the issuances of insurance policies without deductibles. Nationwide observes that 75 Pa.C.S. § 1792(b)(2) provides, "[u]nder no circumstances may a private passenger automobile insurance policy provide a collision deductible in an amount less than $100." In Nationwide's view, application of the made whole doctrine to require insurers to reimburse insureds for their deductible in full from any subrogation recovery would create, in essence, a no-deductible policy contrary to the policy language and the MVFRL, which require insureds to shoulder some of the risk of collision coverage. Instead, Nationwide contends that the pro rata reimbursement procedure utilized by the insurance company and provided for by Section 146.8(c) of the regulations appropriately balances the policies of the made whole doctrine and the deductible requirement by requiring the reimbursement of the insured's deductible from subrogation recoveries on a proportionate basis.

The Acting Pennsylvania Insurance Commissioner filed an *amicus curiae* brief in support of Nationwide.[7] The Commissioner asserts that the made whole doctrine is inapplicable to cases involving collision coverage insurance. He explains, "The 'made whole' doctrine was developed to give consumers with excess damages priority over their insurer when there is a shortfall in the amount of first-party coverage (e.g., Uninsured or Underinsured Motorist ('UM/UIM') coverage) and

own and not Nationwide's rights. As in any subrogation claim, the insurer steps into the shoes of the insured-subrogee, and can only claim the rights of the insured-subrogee. She further argues that Nationwide cannot divide the claim against the tortfeasor into Nationwide's claim for the amount above the deductible and Jones's claim for the amount of the deductible, pursuant to caselaw asserting that a cause of action for negligence cannot be split or divided. *See Fitzpatrick v. Branoff*, 504 Pa. 169, 470 A.2d 521, 523 (1983). We make no determination regarding whether the made whole doctrine applies when an insurer brings the litigation against the third party tortfeasor.

7. We additionally note that Harleysville Preferred Insurance Company; the Pennsylvania Defense Institute, Inc.; Insurance Federation of PA, Inc.; and National Association of Subrogation Professionals, Inc. filed *amicus curiae* briefs in support of Nationwide.

there are limited funds available from any third-party source (i.e., the tortfeasor or his insurer)." Commissioner's Brief at 4. It is also intended, the Commissioner observes, to prevent double recovery by the insured from both the insurer and the tortfeasor. *Id.* at 9. In contrast to insurance such as UIM, which involves coverage limits, the Commissioner notes, "Collision coverage, however, is fundamentally different from other first-party coverages because it does not have a coverage limit." *Id.* at 4 (emphasis omitted). As a result, the Commissioner argues, collision coverage cannot result in a shortfall because the insured is paid the full value of the damage to the vehicle by the insurer, or if totaled, the vehicle's replacement value.

Unlike other first-party benefit insurance, where the insurer is liable from the "first dollar," the Commissioner explains that a deductible is a "thin layer of first dollar liability retained by the consumer (and specifically not transferred to the insurer) to ensure risk-sharing and loss avoidance." *Id.* at 4 (emphasis omitted). Under the policy, the insured agreed to pay the deductible as a first dollar obligation prior to implicating the insurer's obligation to cover the damages. Therefore, the loss of the deductible is not a "shortfall" in the insurance coverage. The Commissioner argues that requiring the insurer to refund the deductible in full to insured prior to recovering its own payment would render the deductible meaningless and would convert the policy into a deductible-free policy, which is prohibited by the MVFRL. Additionally, the Commissioner observes that, pursuant to the MVFRL, premiums are based upon the contractually determined deductible, such that applying the made whole doctrine would "negate any differentials in premiums paid by consumers electing higher or lower deductibles and undermine" the rate structures approved by the Commissioner. *Id.* at 14.

The Commissioner also argues that allowing the insured to recover her entire deductible prior to the insurer receiving any of the subrogation funds is inequitable for two reasons. First, he notes that, in cases such as this, the insurer is bearing the cost and risk of litigation. Second, the Commis-

sioner observes that in collision coverage subrogation cases where an insurer recovers only a portion of the damages it paid to the insured, it usually does so because there has been an apportionment of fault to the insured. For example, if the insured is ten percent at fault in the accident, the third-party tortfeasor's insurance company will only pay the insurer ninety percent of the insured's loss. The Commissioner asserts that it would be inequitable for the insured, who was partially at fault for the accident, to recover in full for her deductible prior to the insurer receiving any of the subrogation proceeds. Accordingly, an insured, who is partially at fault for the accident, would recover all losses, when the insurer who pursued the litigation and accepted the risks thereof, would recover only a portion of its losses.

The Commissioner observes that we need not consider Jones's remaining issues relating to the validity of the Department's regulation because Jones has not demonstrated a right to relief even in the absence of the Department's regulation. If the made whole doctrine does not apply to the pro rata distribution of subrogation recoveries in cases involving deductibles, we need not consider the propriety of the Insurance Department regulations providing for this practice.

In determining the legality of Nationwide's practice of reimbursing Jones from its subrogation recovery only a pro rated portion of the deductible, we must first consider subrogation and the made whole doctrine generally. We have repeatedly held that subrogation is an equitable doctrine intended to place the ultimate burden of a debt upon the party primarily responsible for the loss. *Valora*, 939 A.2d at 320. Subrogation allows the subrogee (in this case the insurer) to step into the shoes of the subrogor (the insured) to recover from the party that is primarily liable (the third party tortfeasor) any amounts previously paid by the subrogee to the subrogor (in this case, the amount of damage to the vehicle less the deductible). *See e.g. Ario v. Reliance Insur. Co.*, 602 Pa. 490, 980 A.2d 588, 594–95 (2009). As well-stated by the Superior Court,

[W]hen an individual who has been indemnified for a loss subsequently recovers for the same loss from a third party, equity compels that the indemnifying party be restored that which he paid the injured party; thereby placing the cost of the injury upon the party causing the harm while preventing the injured party from profiting a "double recovery" at the indemnifying party's expense.

*Allstate Ins. Co. v. Clarke,* 364 Pa.Super. 196, 527 A.2d 1021, 1024 (1987). While subrogation rights may be contractually determined, as in this case, those rights are still subject to equitable principles. *See Valora,* 939 A.2d at 320.

Turning to the made whole doctrine, all the parties agree that the doctrine applies generally in Pennsylvania. *See e.g. Gallop,* 616 A.2d at 1031. *Couch on Insurance* describes the made whole doctrine as follows: "where an insured is entitled to receive recovery for the same loss from more than one source, *e.g.* the insurer and the tortfeasor, it is only after the insured has been fully compensated for all the loss that the insurer acquires a right to subrogation, or is entitled to enforce its subrogation rights." 16 *Couch on Insurance* § 223:134 (3d Ed.) (footnote omitted). Our courts have explained that the made whole doctrine both ensures that the insured is fully compensated for his or her injury before the insurer recovers, in cases where there are insufficient funds to satisfy both the insured and the insurer, and prevents the insured from receiving dual recovery for the same loss from both the tortfeasor and the insurer. *Gallop,* 616 A.2d at 1030.

The case at bar presents the question of whether the made whole doctrine, as described above, applies to cases where the underlying collision coverage policy includes a deductible. Although the General Assembly has not specifically spoken to the question of reimbursement of an insured's deductible from an insurer's subrogation recovery, we cannot ignore that the legislature has set forth clear policy regarding deductibles generally. The MVFRL requires all motor vehicle insurance policies for collision coverage issued in this Commonwealth to contain a deductible of no less than $100. 75 Pa.C.S. § 1792(b)(2). This requirement ensures that insureds share

with their insurance companies the risk of damage to the vehicle. The legislature also directed insurers and the Commissioner to set premium rates based upon the deductible amount chosen by the insured. 75 Pa.C.S. § 1792(b)(4). Accordingly, the legislature provided a system where an insured, who agreed to accept a higher percentage of the risk through a higher deductible, would pay a lower premium to reflect that the insurer would cover less risk. With these legislative directives in mind, we agree with the Commissioner that applying the made whole doctrine to the distribution of subrogation recoveries in collision coverage cases would undermine the MVFRL's provisions related to deductibles. Specifically, application of the made whole doctrine would require the insured to recover the entire deductible from the proceeds of any action against the tortfeasor prior to the insurance company's recovery, thus in essence creating a no-deductible policy, in the limited circumstances of a cases involving subrogation recoveries, in violation of the MVFRL, 75 Pa.C.S. § 1792(b)(2).

Application of the made whole doctrine to deductibles would not only be contrary to the relevant MVFRL provisions but, when considering the inherent nature of deductibles, would run counter to the equitable principles underlying the made whole doctrine and subrogation. "The equitable principle underlying the made whole rule is that the burden of loss should rest on the party paid to assume the risk, and not on an inadequately compensated insured, who is least able to shoulder the loss." 16 *Couch on Insurance* § 223:136. While the made whole doctrine is consistent with equity in other types of first-party insurance cases where the insurer has been paid to assume the risk, it is not in the case of collision coverage insurance involving deductibles.

As discussed at the beginning of this opinion, a primary difference between collision coverage policies utilizing deductibles and other first-party insurance is that with collision coverage, the insured contracts to accept the risk of the first portion of any loss by way of the deductible and to pay the insurer premiums to assume the risk for the entire amount of

the loss above the deductible up to the fair market value of the vehicle. *See* Black's Law Dictionary 285 (6th Ed.1991) (defining "deductible" as "[t]he portion of an insured loss to be borne by the insured before he is entitled to recover from the insurer"). In contrast, in cases involving other first-party insurance coverage, the insurer has accepted premiums in exchange for assuming the risk of the first dollar of coverage up to the policy limits, but any amount above the policy limits is an uninsured risk not attributable to the insurer.

 As noted by the Commissioner, the deductible in a collision coverage policy is a "thin layer of first dollar liability retained by the consumer (and specifically not transferred to the insurer) to ensure risk-sharing and loss avoidance." Commissioner's Brief at 4 (emphasis omitted). The insurer, thus, accepted only the risk of paying if the loss exceeded the amount of the deductible, with premiums calculated based upon the amount of first dollar liability accepted by the insured. Application of the made whole doctrine in such a case would force the insurer essentially to cover the risk of the deductible where the insured has not paid premiums to cover that risk. It follows that the insured should not get preferential treatment in a collision coverage case, when he or she accepted the risk of paying the deductible in the event of an accident. We conclude that the made whole doctrine does not apply in cases involving collision coverage policies, and accordingly, that the practice of pro rata reimbursement of the insured's deductible from the insurer's subrogation recovery does not violate the made whole doctrine.

Given that we conclude that the practice of pro rata reimbursement of the insured's deductible from the insurer's subrogation recovery does not violate the made whole doctrine, and therefore is a valid practice for Nationwide and other insurers to use, we agree with the Commissioner that we need not consider whether the regulation providing for the same process is validly enacted, as the practice is valid with or without the regulation. Accordingly, we do not address the second and third issues granted for review, but instead affirm the decision to dismiss the class action based on our conclusion

that Nationwide did not violate the made whole doctrine in providing Jones pro rata reimbursement of her deductible from Nationwide's subrogation recovery from the third party tortfeasor, such that dismissal of the class action was appropriate.

Although on different grounds than either of the courts below, we affirm the decision to dismiss Appellant Jones's class action based. upon the preliminary objections raised by Nationwide.

Chief Justice CASTILLE, Justices SAYLOR, TODD, McCAFFERY, and ORIE MELVIN join the opinion.

Justice EAKIN files a concurring opinion.

Justice EAKIN, concurring.

I agree with the majority's holding affirming the trial court's dismissal of Appellant's complaint. I write separately as I reach that result on different grounds.

As the Superior Court in this case and the federal district court for the Eastern District of Pennsylvania in *Harnick v. State Farm Mut. Ins. Co.*, 2009 WL 579378, 2009 U.S. Dist. LEXIS 43126 (E.D.Pa. March 6, 2009) noted, this issue is easily resolved upon examination of the regulations promulgated by the Insurance Department. Specifically, 31 Pa.Code § 146.8(c) provides, in part, "Insurers shall, upon the request of the claimant, include the first-party claimant's deductible, if any, in subrogation demands. Subrogation recoveries shall be shared on a proportionate basis with the first-party claimant, unless the deductible amount has been otherwise recovered." *Id.* Accordingly, as Nationwide's practice of *pro rata* reimbursement is specifically allowed by law, the dismissal of Appellant's complaint on the basis of a demurrer was proper, and we need not address the equities or the common law. This is especially true here, where the record is unclear as to why Nationwide was unable to collect the entire amount of Appellant's loss. Although it may be facially assumed Appellant was deemed ten-percent responsible for the collision, this

is not certain based on the record before us, nor are the realities of negotiated settlements such as this one.

Accordingly, I concur with the majority affirming the dismissal of Appellant's complaint.