SYLLABUS

This syllabus is not part of the Court's opinion.  It has been prepared by the Office of the Clerk for the convenience of the reader.  It has been neither reviewed nor approved by the Court.  In the interest of brevity, portions of an opinion may not have been summarized.

**City of Asbury Park v. Star Insurance Company (A-20-19) (083371)**

**Argued March 31, 2020 -- Decided June 29, 2020**

**FERNANDEZ-VINA, J., writing for the Court.**

In this case, the Court addresses a question of law certified by the United States Court of Appeals for the Third Circuit:

> Whether, under equitable principles of New Jersey law, the made-whole doctrine applies to first-dollar risk that is allocated to an insured under an insurance policy, i.e., a self-insured retention or deductible.

The question arises from a dispute between a workers' compensation carrier and its insured, a public employer.

From February 2010 to February 2011, the City of Asbury Park (the City) had an insurance policy with Star Insurance Company (Star) that provided coverage for workers' compensation claims against the City.  The policy included a "self-insured limit retention for workers' compensation" losses against the City in the amount of $400,000 per occurrence.  In turn, Star agreed to indemnify the City for its workers' compensation losses that exceeded the self-insured retention.

In January 2011, John Fazio, an employee of the Asbury Park Fire Department, suffered injuries while fighting a fire.  He filed a workers' compensation claim against the City, which in turn paid him $400,000, the full amount of its self-insured retention limit; Star paid $2,607,227.50, the amount exceeding the self-insured retention limit.

Fazio later filed suit against a third party for the injuries he suffered in the 2011 fire.  Fazio and the third party reached a settlement agreement for $2,700,000.  Subsequently, Fazio, the City, and Star agreed that $935,968.25 of the settlement proceeds would be set aside to partially reimburse the City and Star.

Star issued a demand to recover the entire $935,968.25, contending that it was entitled to be reimbursed in full before the City could recover amounts paid on the self-insured retention.  The City asserted that under the made-whole doctrine, it was entitled

1

to be reimbursed in full before Star could assert its subrogation right.  Star responded that the made-whole doctrine does not apply to self-insured retentions, as application of that doctrine in this case would unjustly enrich the City.

The City filed a declaratory judgment action against Star.  The United States District Court for the District of New Jersey granted summary judgment in favor of Star, finding that "the City has no insurance coverage for the first $400,000.00"; that the parties expressly agreed under the subrogation provision that "Star has the right to substitute itself for the City and is subrogated to all of the City's rights of recovery"; and that the made-whole doctrine does not apply to this case.

The City appealed, and the Third Circuit certified its question to the Court as an important and unresolved matter of New Jersey law.  The Court accepted the question as posed.  240 N.J. 45 (2019).

**HELD:**  The Court answers the certified question in the negative.  Under equitable principles of New Jersey law, the made-whole doctrine does not apply to first-dollar risk, such as a self-insured retention or deductible, that is allocated to an insured under an insurance policy.

1.  In the insurance context, subrogation is a doctrine allowing the insurer to seek recovery from the party at fault, exercised after the insurer has indemnified its insured under the terms of an insurance policy.  Subrogation rights are created in one of three ways:  (1) an agreement between the insurer and the insured, (2) a right created by statute, or (3) a judicial device of equity to compel the ultimate discharge of an obligation by the one who in good conscience ought to pay it.  (pp. 10-12)

2.  Under the made-whole doctrine, an insurer cannot assert a subrogation right until the insured has been fully compensated for his or her injuries.  The doctrine applies when the amount recoverable from the responsible third party is insufficient to satisfy both the total loss sustained by the insured and the amount the insurer pays on the claim.  New Jersey courts have long recognized and utilized the made-whole doctrine.  In Culver v. Insurance Co. of North America, however, the Court stressed that courts must not only turn for guidance to equitable principles, but must also "consider the contractual relevance of the specific subrogation agreement."  115 N.J. 451, 456 (1989).  Thus, courts must consider both the equitable principles of subrogation, such as the made-whole doctrine, as well as the rights agreed upon in the contract.  Ibid.  (pp. 12-16)

3.  While the made-whole doctrine generally applies in this state, New Jersey courts have never addressed the question of whether the doctrine applies to first-dollar risk, such as deductibles and self-insured retentions, borne by insureds.  The Court reviews cases from other jurisdictions.  (pp. 16-21)

2

4.  Considering the equitable principles that guide the doctrine of subrogation alongside insurance policies that allocate first-dollar risk to the insured, the Court finds that the made-whole doctrine does not apply to first-dollar risk allocated to the insured.  A self-insured retention or deductible is an amount of risk that the insured has agreed to assume in exchange for a lower premium cost for the insurance policy.  Where the award from a subrogation action against a third party is insufficient to reimburse both the insured's self-insured retention and the carrier's loss in excess of the self-insured retention, to place priority of recovery with the insured would, in effect, convert the policy into one without a self-insured retention.  Such interference with the contract would essentially write a better policy for the insured than the one purchased.  The Court declines to find "that equity dictates a departure from the terms of the insurance contract into which the parties voluntarily entered under such circumstances."  See Fireman's Fund Ins. Co. v. TD Banknorth Ins. Agency, Inc., 72 A.3d 36, 46 (Conn. 2013).  (pp. 21-22)

5.  The Court's view of the made-whole doctrine requires a close examination of an insurance contract's provisions to determine whether the doctrine will apply, including the effect of reading together provisions relating to self-insured retentions or deductibles and subrogation rights.  Read together, if the policy at issue unambiguously provides Star with all of the City's rights to recovery against third-party tortfeasors in the event that Star makes a payment under the policy, the made-whole doctrine would not apply in this case -- it would not override the parties' agreement.  (pp. 22-23)

**CHIEF JUSTICE RABNER and JUSTICES LaVECCHIA, ALBIN, PATTERSON, SOLOMON, and TIMPONE join in JUSTICE FERNANDEZ-VINA'S opinion.**

SUPREME COURT OF NEW JERSEY
A-20 September Term 2019
083371

City of Asbury Park,

Plaintiff-Appellant,

v.

Star Insurance Company,

Defendant-Respondent.

On certification of question of law from the
United States Court of Appeals for the Third Circuit.

| Argued | Decided |
|--------|---------|
| March 31, 2020 | June 29, 2020 |

Denise M. DePekary argued the cause on behalf of
appellant (Weber Gallagher Simpson Stapleton Fires
& Newby, attorneys; Denise M. DePekary, Andrew L.
Indeck, and Kenneth E. Sharperson, on the briefs).

Thomas E. Hastings argued the cause on behalf of
respondent (Dilworth Paxson, attorneys; Thomas E.
Hastings, of counsel and on the brief).

JUSTICE FERNANDEZ-VINA delivered the opinion of the Court.

In this case, we address a question of law certified by the United States

Court of Appeals for the Third Circuit arising from a dispute between a

workers' compensation insurance carrier and its insured, a public employer.

1

Both plaintiff, the City of Asbury Park (the City), and its workers' compensation carrier, defendant Star Insurance Company (Star), seek reimbursement of monies paid toward an injured firefighter's workers' compensation claim from funds he recouped through settlement with a third-party tortfeasor. The funds available for reimbursement will not cover the full amount paid collectively by the City and Star. The question is whether, under the equitable "made-whole" or "make-whole" doctrine, the City has priority to recover what it paid before Star may recover any of its losses.

Here, that question turns on the interplay between the made-whole doctrine and a particular provision of the contract between Star and the City under which the City "shall retain, as a self-insured retention," a per-occurrence deductible for workers' compensation claims. By virtue of that self-insured retention, the City bears what is known as the "first-dollar risk" -- making it responsible for the first $400,000 of any workers' compensation claim, with Star bearing responsibility for sums exceeding that amount.

The certified question is:

> Whether, under equitable principles of New Jersey law, the made-whole doctrine applies to first-dollar risk that is allocated to an insured under an insurance policy, i.e., a self-insured retention or deductible.

We answer the certified question in the negative.

2

I.

A.

From February 2010 to February 2011, the City held an insurance policy (the Policy) with Star that provided coverage for workers' compensation claims against the City pursuant to the Workers' Compensation Act, N.J.S.A. 34:15-1 to -146. The Policy included a "self-insured limit retention for workers' compensation" losses against the City in the amount of $400,000 per occurrence. In turn, Star agreed to indemnify the City for its workers' compensation losses that exceeded the self-insured retention. In the event of such a loss, Star also agreed to indemnify the City for claim expenses, such as investigation and legal expenses, "in the proportion that the insurer's portion of the loss bears to the total amount of such final award, verdict or judgment against the insured."

The Policy further contained a subrogation provision which provided:

> In the event of any payment under this insurance contract, the insurer shall be subrogated to all of the insured's rights of recovery therefore against any person or organization, and the insured and the service company shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. No person or organization shall do anything to prejudice such a right.

3

B.

1.

In January 2011, John Fazio, an employee of the Asbury Park Fire Department, suffered life-threatening injuries while fighting a fire. Fazio filed a workers' compensation claim against the City, which in turn paid Fazio $400,000, the full amount of its self-insured retention limit; Star paid $2,607,227.50, the amount exceeding the City's self-insured retention limit. Pursuant to N.J.S.A 34:15-40, the payments by the City and Star created a workers' compensation lien in the amount of $3,007,227.50, entitling the City and Star to reimbursement on any recovery by Fazio against a third party.

On December 28, 2012, Fazio filed suit against a third party for the injuries he suffered in the 2011 fire. Fazio and the third party reached a settlement agreement for $2,700,000. Subsequently, Fazio, the City, and Star agreed that $935,968.25 of the settlement proceeds would be set aside in partial satisfaction of all liens held by the City and Star. The $935,968.25 is being held in escrow by the City's workers' compensation defense counsel, who agreed to distribute the funds only as directed by the City and Star, or court order.

Star issued a demand to recover the entire $935,968.25 held in escrow, contending that pursuant to the Policy, it was entitled to be reimbursed in full

4

before the City could recover amounts paid on the self-insured retention. The City asserted that under the made-whole doctrine, it was entitled to be reimbursed in full before Star could assert its subrogation right. Star responded that the made-whole doctrine does not apply to self-insured retentions, as application of that doctrine in this case would unjustly enrich the City.

The City filed a declaratory judgment action against Star in Superior Court asserting that it "has subrogation rights arising out of its payment of its self-insured retention of $400,000.00 and is entitled to be reimbursed out of the" escrow account before Star may recover anything. Star removed the matter to the United States District Court for the District of New Jersey. The district court denied the City's motion to remand the case to state court. Star then filed for a declaratory judgment claiming that it is "entitled to be reimbursed in full before any reimbursement of the City's self-insured retention."

## 2.

Both parties moved for summary judgment pursuant to Fed. R. Civ. P. 56. The district court granted Star's motion and denied the City's motion. Relying on the plain language of the Policy, the court found that "the City has no insurance coverage for the first $400,000.00," and the parties expressly

5

agreed under the subrogation provision that "Star has the right to substitute itself for the City and is subrogated to all of the City's rights of recovery."

Moreover, the court rejected the City's contention that the made-whole doctrine applies to this case. First, the court reasoned that an insured's right to be made whole before the insurer can recover anything from a third-party tortfeasor can be altered by the insurance contract. Here, the court found that the Policy's subrogation provision altered the City's right to be made whole. Second, the court determined that the made-whole doctrine does not apply to first-dollar coverage such as deductibles or self-insured retentions, because to hold otherwise "would convert [the Policy] to an insurance policy without a deductible," allowing the City "to gain an unbargained-for windfall at the expense of [Star]."

The City appealed the district court's judgment. After briefing, the Third Circuit determined that the appeal raised an important and unresolved matter of New Jersey law. Pursuant to Rule 2:12A-3, the Third Circuit certified its question to this Court. We accepted the question as posed by the Third Circuit. 240 N.J. 45 (2019).

6

II.

A.

The City primarily relies on <u>Providence Washington Insurance Co. v. Hogges</u>, 67 N.J. Super. 475 (App. Div. 1961), in support of its contention that in New Jersey, the insured is to be "made whole" before an insurer may recover proceeds from a third-party tortfeasor, even if the insured's only remaining loss is from the policy's deductible or self-insured retention. The City points out that in <u>Hogges</u>, the policy at issue contained a subrogation provision that is essentially identical to the subrogation provision in this case. (discussing <u>Hogges</u>, 67 N.J. Super. at 476).

The City stresses that the Appellate Division in <u>Hogges</u> labeled the subrogation provision as a "general clause" and determined that, under such a clause, "the interests of the insured come first. In the absence of express terms in the contract to the contrary, he must be made or kept whole before the insurer may recover anything from him or from a third party under its right of subrogation." (quoting <u>Hogges</u>, 67 N.J. Super. at 482). Thus, the City contends that, in this case, the subrogation provision in the Policy does not contain "express terms" that run contrary to its rights as an insured under the made-whole doctrine.

7

Further, the City points out that in Hogges the insured sued a third-party tortfeasor in part for $900 in property damage caused to his vehicle without notifying his carrier, which paid for this loss minus a $50 deductible. (discussing Hogges, 67 N.J. Super. at 476-78).  In finding that the insured did not violate the subrogation provision by filing the third-party suit and alleging property damage, the Appellate Division determined that the insured "still had a prior right to $50 of any sum recovered for property damage from the tortfeasors, and to any surplus over $900," while the carrier would have been indemnified up to the $850 paid on the policy.  (quoting Hogges, 67 N.J. Super. at 479).  On that basis, the City contends that the Appellate Division endorsed the made-whole doctrine and "required reimbursement of an insured's insurance deductible prior to the insurer receiving any monies by way of subrogation."  The City asserts that this result was "cited favorably" by this Court in Culver v. Insurance Co. of North America, 115 N.J. 451, 458 (1989), in which we stated that the Hogges court "allowed the insured to be paid its $50 deductible from the third party award before the insurer could be reimbursed for its insurance payment."

## B.

Star contends that applying the made-whole doctrine to deductibles or self-insured retentions would circumvent "the bargain made by the parties" of

8

an insurance policy "and unjustly enrich insureds who had agreed to bear financial responsibility for first-dollar loss." Star emphasizes that the City agreed to bear the first $400,000 of each workers' compensation loss. By agreeing to the Policy, Star asserts that "[t]he City did not pay for first-dollar coverage, [yet] that is what it would get if its self-insured retention were reimbursed before the payments made by Star." Star further points out that insureds receive lower premiums in return for retaining first-dollar risk, thus Star contends that an insured's reimbursement for those funds before the carrier's payment results in a windfall for the insured.

Star asserts the Policy's subrogation provision gives Star all rights of recovery whenever it pays for a loss. Star contends there "was no occasion for [the] subrogation provision to address the priority of recovery" because the "Policy does not specify an upper limit on workers' compensation coverage." With "no prospect that the City could incur a workers' compensation loss in excess of an upper limit of its coverage," Star contends there is no "circumstance in which the made-whole doctrine could apply" under this Policy.

Star further contends that the Appellate Division's statements in Hogges relied upon by the City were dictum and not relevant to the court's holding. Star points out that the carrier in Hogges sued the insured for reimbursement

9

of its $850 payment after the insured filed a third-party lawsuit without notifying the carrier and lost. Star asserts that the issue before the Appellate Division in that case "was about whether the insured had to reimburse the insurer for the entire payment made by the insurer, not whether the insured was entitled to reimbursement of his deductible." Thus, Star contends that the Hogges court's statement "that the 'insured had a prior right to $50 of any sum recovered for property damage from the tortfeasors'" "was not essential, or even relevant, to the issue before the court." (quoting Hogges, 67 N.J. Super. at 479). Moreover, Star argues that the Hogges "court's comments relating to the priority of recovery are at best ambiguous, because the court also observed that [the insured] would have held any recovery from the tortfeasor in trust for the benefit of the insurer 'up to' $850." (quoting Hogges, 67 N.J. Super. at 479).

## III.

### A.

To answer the Third Circuit's certified question, we begin with the doctrine of subrogation. "It has long been appreciated that '[s]ubrogation is a device of equity to compel the ultimate discharge of an obligation by the one who in good conscience ought to pay it [and] . . . to serve the interests of essential justice between the parties." Culver, 115 N.J. at 455-56 (alterations

10

in original) (quoting <u>Standard Accident Ins. Co. v. Pellecchia,</u> 15 N.J. 162, 171 (1954)).

> In the insurance context, subrogation is a doctrine allowing the insurer to seek recovery from the party at fault, exercised after the insurer has indemnified its insured under the terms of an insurance policy. The doctrine is based on the principle that a benefit has been conferred upon the insured at the expense of the insurer and vests in the latter any rights the former may have had against a third party who is liable for the damages.
>
> [Kenny & Lattal, <u>N.J. Insurance Law</u> § 8-2, at 231-32 (2019 ed.) (citations omitted).]

In subrogation cases, the insured's right to recovery against a third party tortfeasor vests in the insurer, and the insurer "steps into the shoes of the insured," <u>Pellecchia</u>, 15 N.J. at 172, and files suit against the tortfeasor subject to any "defenses which would defeat recovery by the [insured]." <u>Hartford Fire Ins. Co. v. Riefolo Constr. Co., Inc.</u>, 81 N.J. 514, 524 (1980).

> It is important to understand that subrogation rights do not arise spontaneously nor are they free-floating or open-ended. Subrogation rights are created in one of three ways: (1) an agreement between the insurer and the insured, (2) a right created by statute, or (3) a judicial device of equity to compel the ultimate discharge of an obligation by the one who in good conscience ought to pay it. While the doctrine has an equitable foundation, the attitude of courts toward subrogation has been described as one of allowing complete freedom of contract and trying to determine

11

and enforce the expressed intention of contracting parties.

[Culver, 115 N.J. at 456 (quotation marks and citations omitted).]

"Although [subrogation is] highly favored in the law, 'it is not an absolute right but rather is applied under equitable standards with due regard to the legal and equitable rights of others . . . .'" Weinberg v. Dinger, 106 N.J. 469, 489-90 (1987) (quoting Pellecchia, 15 N.J. at 171-72). "When . . . an insurance carrier which has satisfied a loss it was paid to cover, seeks to recoup by asserting a claim its insured has against another with respect to that loss, the final question must be whether justice would be furthered by that course." Id. at 490 (quoting A. & B. Auto Stores of Jones St., Inc. v. City of Newark, 59 N.J. 5, 23 (1971)).

## B.

"Under the make-whole doctrine, an insurer cannot assert a subrogation right until the insured has been fully compensated for his or her injuries." 44A Am. Jur. 2d Insurance § 1780. The doctrine applies "when the injured party's damages exceed a limited pool of funds from which recovery may be had," ibid., or, in other words, "[w]hen the amount recoverable from the responsible third party is insufficient to satisfy both the total loss sustained by the insured and the amount the insurer pays on the claim," Fireman's Fund Ins. Co. v. TD

12

Banknorth Ins. Agency, Inc., 72 A.3d 36, 40 (Conn. 2013).  Under such circumstances, the made-whole doctrine holds that "the injured party should be the first to tap into the limited pool of funds and recover on any loss, and when someone cannot be fully paid, the loss should be borne by the subrogee, the insurer."  44A Am. Jur. 2d Insurance § 1780.

Our courts have long recognized and utilized the made-whole doctrine.  See, e.g., Hogges, 67 N.J. Super at 482 ("In the absence of express terms in the [insurance] contract to the contrary, [the insured] must be made or kept whole before the insurer may recover anything from him or from a third party under its right of subrogation."); see also McShane v. N.J. Mfrs. Ins. Co., 375 N.J. Super. 305, 313-15 (App. Div. 2005) (applying the made-whole doctrine to a subrogation action involving underinsured motorist coverage); Werner v. Latham, 332 N.J. Super. 76, 84 (App. Div. 2000) (finding a health insurance carrier "entitled to reimbursement of its medical payments only to the extent that the settlement proceeds [from the third-party suit] exceed the full amount of plaintiff's damages for all damage claims other than medical payments").

In Culver, the plaintiffs sustained a fire loss, and their homeowners' coverage was insufficient to fully compensate them for their loss.  115 N.J. at 453.  The plaintiffs and the defendant carrier entered into a subrogation agreement under which the parties would proceed jointly in an action against

the third-party tortfeasors that caused the fire. Ibid. The parties "agreed to share any recovery[,] 80% for [the carrier] and 20% for the [plaintiffs]"; the carrier "would bear all costs of litigation and be entitled to legal fees." Ibid. After the action against the tortfeasors settled, the plaintiffs refused to accept their share of the proceeds on the grounds that the defendant was to "receive from the proceeds of the settlement more than it had paid out to [the plaintiffs] on the policy coverage and that [the plaintiffs'] total recovery, both by way of the policy limit and the settlement proceeds, would be substantially less than [their] loss." Culver v. Ins. Co. of N. Am., 221 N.J. Super. 493, 498 (App. Div. 1987), rev'd, 115 N.J. 451 (1989).

In the pending subrogation action between the parties, the carrier moved to enforce the agreement. Culver, 115 N.J. at 454. The plaintiffs opposed the motion and cross-moved for a different allocation, alleging fraud and a breach of fiduciary duty by the carrier and its counsel. Ibid. The trial court ruled in favor of the carrier's motion and against the plaintiffs' motion, and the plaintiffs failed to appeal the trial court's order. Ibid. Instead, the plaintiffs commenced a new action four months later, proffering the same allegations from the prior cross-motion against the carrier. Ibid. The defendant "moved for summary judgment on the grounds that the issues raised in the complaint were res judicata, which the trial court granted." Ibid.

14

On appeal, the Appellate Division reversed, ruling that

> the subrogation agreement between the [parties] was not enforceable. It determined that [the carrier, as] the subrogating insurer, had "a trust obligation to the insured in respect of the difference between the insurance payment and the insured's actual loss," and [the carrier] was therefore obligated to hold from the settlement an amount equal to the uninsured portion of their loss in trust for the [plaintiffs]. [Culver,] 221 N.J. Super. at 502. The appellate court concluded that "the [subrogation] agreement," calling for a different result, "appears to be unconscionable, violative of public policy and in abrogation of [the carrier's] trust obligation to its insureds." Id. at 504. This conclusion, according to the Appellate Division, obviated the application of the doctrine of res judicata.
>
> [Culver, 115 N.J. at 455 (sixth alteration in original).]

The Appellate Division's finding that the carrier had such a "trust obligation to the insured" was based on the "equitable principle [that] the right of subrogation does not arise until the injured party has been made whole." Culver, 221 N.J. Super. at 500-03.

This Court in turn determined that "[t]he appellate court appropriately turned for guidance initially to equitable principles under the standard subrogation clause of the insurance policy" but that "it failed then to consider the contractual relevance of the specific subrogation agreement." Culver, 115 N.J. at 456. We observed that even in Hogges -- a primary authority on which the appellate court relied -- the court expressly stated that the made-whole

15

doctrine is subject to the express terms and provisions of the insurance contract.  Id. at 457-59.  Thus, we determined that in these cases, courts must consider both the equitable principles of subrogation, such as the made-whole doctrine, as well as the rights agreed upon in the contract.  Ibid.

## C.

While the made-whole doctrine generally applies in New Jersey, our courts have never addressed the question of whether the doctrine applies to first-dollar risk, such as deductibles and self-insured retentions,[1] borne by insureds.  Contrary to the City's assertion, the Appellate Division in Hogges did not address this question, as the issue there was whether the insured violated the policy by filing an unsuccessful suit against a third-party tortfeasor without notifying his carrier.  67 N.J. Super. at 477-78.

Other states have addressed whether the made-whole doctrine applies to deductibles.  In Fireman's Fund, for example, the Supreme Court of Connecticut was asked by the Second Circuit whether "insurance policy deductibles [are] subject to Connecticut's made whole doctrine."  72 A.3d at 38.  There, a construction company retained the defendant, TD Banknorth, to

---

[1]  Under the circumstances of this case, there is no material distinction between self-insured retentions and deductibles.  See generally IMO Indus., Inc. v. Transam. Corp., 437 N.J. Super. 577, 622 (App. Div. 2014) (outlining the differences between self-insured retentions and deductibles); Kenny & Lattal, app. A, at 831, 865 (defining "deductible" and "self-insured retention").

16

arrange insurance for its work on a housing development.  Ibid.  To protect itself against any negligence, TD Banknorth purchased errors and omissions insurance coverage from the plaintiff, Fireman's Fund Insurance Company, subject to a $150,000 deductible on each claim.  Ibid.  After a fire occurred on a lot that was part of the housing development but not included in the policies arranged by TD Banknorth, the construction company filed suit against TD Banknorth for its negligent omission of the lot.  Ibid.  Fireman's Fund and TD Banknorth settled with the construction company for $354,000, of which "TD Banknorth contributed $150,000 (its single claim deductible) and Fireman's Fund contributed the $204,000 remainder."  Ibid.

TD Banknorth and Fireman's Fund then proceeded to file a claim against the insurers that denied the construction company's underlying claim, and the ensuing combined settlements equaled $208,000, which was deposited into an escrow account.  Id. at 38-39.  As in the matter before us, a dispute arose between Fireman's Fund, which sought to recover the full $208,000, and TD Banknorth, which contended that "under Connecticut's make whole doctrine, it was entitled to recover its $150,000 deductible from the escrow funds."  Id. at 39.

In determining that Connecticut's made-whole doctrine does not apply to deductibles, the court stated that,

17

[i]f the insured were to be reimbursed for its deductible before the insurer is made whole, the insured would be receiving an unbargained for, unpaid for, windfall. Under the terms of the insurance policy, it was agreed that, as a condition precedent to the insurer being out of pocket for even one dollar, the insured had to first be out of pocket the amount of the deductible. The [make] whole doctrine deals with situations in which the combination of the amount of the deductible and the amount of the insurance payment is a sum that was insufficient to make the insured whole, and a recovery is made from a third party (typically, the insurer for the tortfeasor [who] injured the insured).

[Id. at 42 (second and third alterations in original) (quoting 2 A. Windt, Insurance Claims and Disputes: Representation of Insurance Companies and Insureds § 10:6, at 10-42 through 10-43 (6th ed. 2013)).]

The Fireman's Fund court further observed that "[a] deductible represents the level of risk that the insured has agreed to assume, ordinarily in exchange for a lower premium cost for the insurance policy," id. at 46, a fact other courts have noted as well, see, e.g., Jones v. Nationwide Prop. & Cas. Ins. Co., 32 A.3d 1261, 1263 (Pa. 2011) ("Not surprisingly, if an insured is willing to bear the risk of paying a higher deductible, her premiums will be reduced to reflect that the insurer will be responsible for covering less risk."). The Fireman's Fund court added that it is "not of the opinion that equity dictates a departure from the terms of the insurance contract into which the parties voluntarily entered under such circumstances." 72 A.3d at 46. The

18

court determined that to apply the made-whole doctrine to the deductible at issue "would effectively disturb the contractual agreement into which TD Banknorth and Fireman's Fund entered, thereby creating a windfall for TD Banknorth for a loss that it did not see fit to insure against in the first instance when it contracted for lower premium payments in exchange for a deductible." Id. at 47.

In Jones, the Supreme Court of Pennsylvania reached a similar result when it addressed "whether the made[-]whole doctrine . . . applies to cases where the underlying collision coverage policy includes a deductible." 32 A.3d at 1271. The named plaintiff, Brenda Jones, filed a class action against her carrier for its practice of reimbursing, on a pro rata basis, its insureds' deductibles from funds obtained in the carrier's subrogation actions against third-party tortfeasors. Id. at 1264-65. The class action sought full reimbursement of the deductibles pursuant to the made-whole doctrine. Id. at 1265.

The court determined in part that applying the made-whole doctrine to a collision coverage policy's deductible would run contrary to the state's Motor Vehicle Financial Responsibility Law. Id. at 1271. It also found that application of the doctrine, "when considering the inherent nature of deductibles, would run counter to the equitable principles underlying the

19

made[-]whole doctrine and subrogation." Ibid. The court observed that the state's collision policies require the insured to "accept the risk of the first portion of any loss by way of the deductible[,] and to pay the insurer premiums to assume the risk of the entire amount of the loss above the deductible up to the fair market value of the vehicle." Id. at 1272. The court contrasted this to other policies where carriers provide "coverage up to the policy limits, but any amount above the policy limits is an uninsured risk not attributable to the insurer." Ibid. In this case, the court determined that the carrier

> accepted only the risk of paying if the loss exceeded the amount of the deductible, with premiums calculated based upon the amount of first dollar liability accepted by the insured. Application of the made whole doctrine in such a case would force the insurer essentially to cover the risk of the deductible where the insured has not paid premiums to cover that risk. It follows that the insured should not get preferential treatment in a collision coverage case, when he or she accepted the risk of paying the deductible in the event of an accident.
>
> [Ibid.]

Thus, the court concluded "that the practice of pro rata reimbursement of the insured's deductible from the insurer's subrogation recovery does not violate the made whole doctrine, and therefore is a valid practice for . . . insurers to use." Ibid.

The Supreme Court of Washington reached a different conclusion in response to the question of "whether a first-party insurer, upon obtaining a partial recovery in a subrogation action, is required to reimburse its fault-free insureds for the full amount of their deductibles before any portion of the subrogation proceeds can be allocated to the insurer." Daniels v. State Farm Mut. Auto. Ins. Co., 444 P.3d 582, 584 (Wash. 2019). Observing that "an insured pays a higher premium for a lower deductible to make up for the increased administrative costs that come with the insurer having to cover smaller claims," the Daniels court held that "[r]equiring that an insurer reimburse insureds for deductibles as part of the made whole doctrine does not interfere with this purpose and does not rewrite the policy to one with no deductible." Id. at 588. The court explained that, "[w]here insureds sustain a loss that does not exceed the amount of their deductible, they will still receive no benefits under the policy." Ibid.

IV.

Considering the equitable principles that guide the doctrine of subrogation alongside insurance policies that allocate first-dollar risk to the insured, see Culver, 115 N.J. at 457-59, we find that the made-whole doctrine does not apply to first-dollar risk allocated to the insured.

21

A self-insured retention or deductible is an amount of risk that the insured has agreed to assume in exchange for a lower premium cost for the insurance policy. See Fireman's Fund, 72 A.3d at 46; Jones, 32 A.3d at 1263. Where the award from a subrogation action against a third party is insufficient to reimburse both the insured's self-insured retention and the carrier's loss in excess of the self-insured retention, to place priority of recovery with the insured would, in effect, convert the policy into one without a self-insured retention. Such interference with the contract would essentially "write a better policy for the insured than the one purchased." See Templo Fuente, 224 N.J. at 200 (quoting Chubb Custom Ins. Co. v. Prudential Ins. Co. of Am., 195 N.J. 231, 238 (2008)). The result would be "an unbargained for, unpaid for, windfall" to the insured. See Fireman's Fund, 72 A.3d at 42 (quoting Windt, § 10:6, at 10-42 through 10-43). We decline to find "that equity dictates a departure from the terms of the insurance contract into which the parties voluntarily entered under such circumstances." See id. at 46.

Here, because we are answering a certified question of law, we do not apply that legal conclusion to the contract at issue. Instead, we observe that our view of the made-whole doctrine requires a close examination of an insurance contract's provisions to determine whether the doctrine will apply, including the effect of reading together provisions relating to self-insured

22

retentions or deductibles and subrogation rights. Read together, if the Policy unambiguously provides Star with all of the City's rights to recovery against third-party tortfeasors in the event that Star makes a payment under the Policy, that conclusion means that, under our decision today, the made-whole doctrine would not apply in this case. Under such circumstances, the made-whole doctrine would not override the parties' agreement.

V.

In sum, we conclude that under equitable principles of New Jersey law, the made-whole doctrine does not apply to first-dollar risk, such as a self-insured retention or deductible, that is allocated to an insured under an insurance policy.


CHIEF JUSTICE RABNER and JUSTICES LaVECCHIA, ALBIN, PATTERSON, SOLOMON, and TIMPONE join in JUSTICE FERNANDEZ-VINA'S opinion.